**UNITED STATES of America, Appellee,**

v.

**Frank MASCIALE, Defendant-Appellant.**

**No. 356, Docket 23977.**

United States Court of Appeals Second Circuit.

Argued May 9, 1956.

Decided Aug. 22, 1956.

Merrell F. Clark, Jr., New York City, for defendant-appellant.

Marie L. McCann, Asst. U. S. Atty., Eastern Dist. of New York, Brooklyn, N. Y. (Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before CLARK, Chief Judge, and FRANK and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

The defendant appeals from his conviction on three counts of an indictment, two of which charged him with a sale of narcotics on March 2, 1954, in violation of two sections of the revenue laws, and the third (Count 5 of the indictment) with conspiracy to make a sale, in violation of 21 U.S.C.A. § 174.

As stated in his brief, "Defendant does not deny that the narcotics sale took place; he does not deny that he participated, though not directly, in that sale." Instead, he invokes the defense of entrapment. On the ground that "the Government failed to produce any substantial evidence that the defendant was ready and willing without persuasion to commit the offense" he predicates error on the failure of the trial judge to direct an acquittal. No criticism is made, or could be made, of the judge's charge.

It is not disputed that one Marshall, an agent of the Bureau of Narcotics, in December 1953, informally employed one Kowel to help in uncovering narcotics "pushers"; that on January 14, 1954, Kowel introduced Marshall to the defendant, representing him (Marshall) to be a buyer of narcotics in large quantities; that in the ensuing weeks both Marshall and Kowel were in frequent touch with the defendant in connection with a possible sale of narcotics; that the defendant himself sought out one Seifert and introduced him to Agent Marshall on March 1, 1954, for the purpose of arranging a sale; that the sale was accomplished on the following day.

Marshall testified that on January 14, 1954, after Kowel [Jack] had introduced him to the defendant as "Chappie," the following transpired: "Chappie, Jack and I then sat down in one of the booths and almost immediately we started to discuss the narcotics traffic. I told Chappie that I was interested in large quantities of drugs, heroin to be exact, and not as a street pusher, if I may quote, but that I had—I transacted my business—I posed as a seller out of New York City and I was only interested in

good and large quantities, and he should tell me right away if he is not the person to see, then we will finish this conversation pleasantly right then and there"; that thereupon he [the defendant] inquired as to the extent of Marshall's activity in narcotics and said that he, Masciale, "was primarily a gambler and that he was not a narcotics trafficker as such, that his business is mostly gambling but that he knew the right people in the narcotics traffic * * * and knew someone whom he considered high up in the narcotics traffic to whom he would introduce me and that I was able to get * * * 88 per cent pure heroin from this source." Agent Marshall further testified that after numerous telephone calls and several personal meetings with the defendant, who said he was interested in sales because of his need of money, they met, together with Agent Finlay, on March 1, 1954, when the defendant introduced them to Seifert who said he could arrange to supply them with heroin and who did in fact arrange a sale of an ounce to Marshall for $400. To facilitate the consummation of the sale, Marshall testified, the defendant loaned his automobile to Seifert.

The defendant himself testified that on January 15, when he met Marshall for the second time, Marshall brought up the subject of narcotics and asked, "Are you going to get the ball rolling?" to which he (the defendant) replied: "I am trying"; that on about February 15, he met Marshall who offered $400 for a sample of heroin and that he then replied: "I have got to have the money first"; that thereupon Marshall gave him the money which he later returned with the explanation that the expected source of the sample "did not show up." He testified that on about February 25 he told Marshall he was going to approach another source from whom he believed a purchase might be made in a large amount and that he himself approached Seifert, who was this other source, and after a favorable contact with Seifert

called Marshall by telephone for a meeting for the express purpose of arranging a sale.

It is true that the defendant further testified that Kowel over a period of several months had urged him to engage in the narcotics traffic, pointing out the pecuniary rewards which might be expected both by the defendant and by Kowel; that for months he had rebuffed Kowel's importunities; that in meeting Marshall and purporting to cooperate he was in fact merely "stringing him along" in order to increase Kowel's prestige in the eyes of Marshall. However, the jury may well have believed the defendant when he testified as to his voluntary cooperation with Marshall throughout the whole period of their acquaintance and may have thought him lying when he testified that his experience in the traffic was nil and that his cooperation with Marshall in the earlier stage of their acquaintance was feigned.

█ On the facts, we think it plain that this is a case in which both the sale and the conspiracy were induced by Marshall, a Government agent. That being so, the burden was on the Government, by way of reply to the defense of entrapment, to prove a sufficient excuse for the inducement. United States v. Sherman, 2 Cir., 200 F.2d 880,[1] 882. In that case, this court said: "It is a valid reply to the defence, if the prosecution can satisfy the jury that the accused was ready and willing to commit the offense charged, whenever the opportunity offered." And in the same case it was said that, once the inducement is shown, the prosecution "had to satisfy the jury that" the defendant "did not need any persuasion; but that he stood ready to procure heroin for anyone who asked for it".

In the Sherman case, it is true, it was held that the prosecution had failed to prove a valid reply to the defense of entrapment. In the case at bar, however, the evidence against the defendant is palpably stronger. There was evidence that the defendant here in his first meeting with the Government agent, who had been introduced to him as a prospective buyer of narcotics, boasted that "he knew the right people in the narcotics traffic" and promised an introduction. Also in this case there is the testimony of the defendant himself that in his second meeting with Marshall he said "I am trying" to find you (Marshall) a source of supply and that when he later had made a favorable contact with Seifert he himself called Marshall to arrange the sale.

Nor are the proofs of the Government's reply insufficient for failure to show that the defendant's conduct in arranging the sale was induced without persuasion *by Kowel*. For, as noted above, the defendant himself testified that he had consistently rebuffed Kowel's importunities. *Moreover, he further* testified that, when finally at Marshall's inducement he made his contact with Seifert, Kowel "was no longer in the picture" and assented to the question, "So that as far as you knew he was no longer concerned in the transaction?"

█ The case on appeal has been ably presented by assigned counsel for whose assistance the court is grateful. Nevertheless, notwithstanding the excellence of the advocacy, we think the evidence sufficient to warrant a finding that the defendant at Marshall's behest stood ready without persuasion to make arrangements for illegal sales whenever the opportunity offered. The crucial question was one for the jury. The request for a directed acquittal was rightly refused.

█ On appeal, other alleged errors are assigned which require scant com-

1. In United States v. Sherman, this court gave its considered interpretation of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. There have since been no developments in this field which suggest that we should now overrule or modify this interpretation of Sorrells then reached. Neither Sherman nor Sorrells hold that proof of a prior conviction, or even direct proof of a prior commission, of the same or of a kindred offense is essential to make out a valid reply to the defense of entrapment.

ment. Prejudice is asserted because of the noise resulting from construction in the street outside. However, granted that there was some extraneous noise in the court room, we think the condition not materially prejudicial to the defendant. After all, most of the witnesses were those proffered by the Government. The judge's effort to expedite the trial appears to have been altogether proper and free from resulting prejudice. Lastly, it is contended that the judge, in denying the defendant's motion for a verdict of acquittal, in the presence of the jury expressed the view that the defense of entrapment was not borne out by the evidence. In this comment of the judge we find no error. Moreover, the judge sufficiently protected the defendant from any improper prejudice by instructing the jury that it was for them to say whether the defendant was ready and willing to commit the offense charged, with a final caution as follows: "If anything I have said about the testimony differs from your memory or your understanding disregard what I say and rely on your own memory and your own understanding."

Affirmed.

FRANK, Circuit Judge (dissenting).

Disregarding all testimony not favorable to the prosecution, we have this basic fact on which this conviction must stand or fall: Before Marshall, the government agent, met the defendant, the latter had never been guilty of the crime of illegal dealing in narcotics or of anything like it. He had been twice convicted on charges of gambling, a fact to which my colleagues do not refer, obviously because gambling is a crime so wholly different in character that it must here be disregarded as a factor rebutting the defense of entrapment. So, to all intents and purposes, we have this simple case: A man, theretofore innocent of criminal wrong-doing, is easily persuaded by a federal detective to do an act which a criminal statute, read literally, makes a crime.

The following illustration will help to bring sharply into focus the problem we face here: Mr. Weak meets Mr. D. E. Coy at a bar. Unknown to Weak, Coy is a plain-clothes detective. Coy knows that Weak has never committed a crime. But, over some drinks, Coy drops a hint about the two of them burglarizing a certain house. As the hint does not shock Weak, Coy more openly proposes the burglary. Weak agrees. The next night they break into the house. Coy then arrests Weak. At Weak's trial for burglary, he sets up the defense of entrapment. Is the defense no good because of Weak's willingness to accept Coy's proposal? My colleagues say, Yes. I think the Supreme Court says, No.

For the federal courts, the basic teaching on the entrapment doctrine is to be found in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 212, 77 L.Ed. 413. It tells us the following: Entrapment serves as a defense, not because of any merit in the defendant, but solely because the government may not validly (except with the express statutory approval of Congress) manufacture a crime. Only if the defendant's past conduct justifies the belief that, without persuasion by a government officer, the defendant would have committed that crime or a substantially similar crime, is that persuasion valid; it is then, and then only, proper as a means of obtaining evidence of a crime, like that which would have occurred in any event, but which might have been difficult to detect other than by setting a trap, for "artifice and stratagem may be employed to catch those engaged in criminal enterprises." The minority opinion in Sorrells' case said that no statute could authorize the conviction of a person, previously innocent of a substantially similar crime, on evidence procured by trap-setting. The majority opinion did not go that far. It said that entrapment of such a person would be no defense if Congress specifically so provided. But the majority opinion declared that, when Congress has not explicitly so provided, an official in-

ducement to do that which the statute literally forbids "takes the case out of the purview of the statute because it cannot be supposed that the Congress intended that the letter of its enactment should be used to support such a gross perversion of its purpose. * * * We are unable to conclude that it was the intention of the Congress in enacting this statute that its processes of detection and enforcement should be abused by the instigation by government officials of an act on the part of persons otherwise innocent in order to lure them to its commission and to punish them." In short, under any federal statute now on the books, such a governmentally instigated act, on the part of a previously innocent person, is never a crime within the correct construction of the statute.[1]

In the light of Sorrells' case, I think that, in the instant case, the prosecution did not succeed in rebutting the entrapment defense. I can see no rational basis for the distinction, which my colleagues draw, between (1) a case where the officer's persuasion of the defendant is difficult and (2) one where it is easy.

If that distinction maintains, the result will be that the federal police—instead of devoting themselves to the job of catching criminals—may, when it pleases them, spend their time and government money turning potential into actual criminals, shoving over into criminality men who may be hovering on its brink. I think the narcotics police may not legitimately proceed on this principle (or un-principle): "There's a man likely some day to violate the Narcotics Act. Let's not wait to see whether he will. Let's incite him to do so and then nab him." This is neither the prevention of crime nor the detection and punishment of criminals. In such circumstances, the police have not caught a criminal; they have taught a man how to become a criminal. (Incidentally, what is their motive? Are criminals now in short supply? Do these federal police fear unem-

ployment or believe they must make work for the judges lest they become loafers?)

If my colleagues' distinction between an easy and a difficult persuasion is adopted, how will it work? Just what is an easy seduction? What is its measure? After how long a period of official instigation is a defendant's literal infraction of a statute not a crime? Will it be a crime if he yields to a detective's blandishments at the end of two or three months but not if at the end of eight or ten?

My colleagues do not cite a single precedent in accord with their position. Their only mention of Sorrells is in a footnote to their discussion of the one case on which they rely, United States v. Sherman, 2 Cir., 200 F.2d 880, 882. We there decided that the defense of entrapment—a defense to a charge of selling narcotics—had not been successfully rebutted by the prosecution because it had failed to show that Sherman had been in the habit of dispensing such drugs. Discussing Sorrells, we said that, once the accused proves that an official induced him to do the alleged illegal act, the prosecution has the burden of showing that the accused was "ready * * * without persuasion and was * * * awaiting any propitious opportunity to commit the offence", that he "did not need any persuasion". Certainly the prosecution made no such showing in the case at bar. Indeed, the prosecution in Sherman had a much stronger basis for rebutting the entrapment defense than it has here. For, as we pointed out in Sherman, there the defendant, a drug addict, had been in the habit of illegally buying heroin for himself. True, in the course of discussing Sorrells in Sherman's case, we also used the expressions, quoted by my colleagues here, that the prosecution could discharge its burden by showing that "the accused was ready and willing to commit the offence charged, whenever the opportunity offered", and that he "stood ready to procure heroin

---

1. Presumably there would be same result with respect to a common law crime, if there were such a thing in the federal system.

for anyone who asked for it". I think that my colleagues, by reading these expressions entirely out of their context, have misinterpreted the interpretation we gave Sorrells in Sherman's case.

