**David Louis HANSFORD, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 16432.**

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 27, 1962.

Decided by Judgment Entered April 13, 1962.

Opinion Rendered May 3, 1962.

Mr. George W. Shadoan, Washington, D. C., for appellant. Mr. Robert L. Callahan, Jr., Takoma, Md. (appointed by this court) was on the brief for appellant.

Mr. Nathan J. Paulson, Asst. U. S. Atty., for appellee. Messrs. David C. Acheson, U. S. Atty., Charles T. Duncan, Principal Asst. U. S. Atty., Arthur J. McLaughlin, Asst. U. S. Atty., and Miss Doris H. Spangenburg, Asst. U. S. Atty. at the time the brief was filed, were on the brief for appellee. Mr. Donald S. Smith, Asst. U. S. Atty., also entered an appearance for appellee.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON, PRETTYMAN, BAZELON, FAHY, WASHINGTON, DANAHER, BASTIAN and BURGER, Circuit Judges, sitting *en banc*.

FAHY, Circuit Judge, with whom EDGERTON, BAZELON, WASHINGTON, DANAHER and BURGER, Circuit Judges, join.

Hansford, the appellant, was found to have sold four capsules containing heroin to a special employee of the Metropolitan Police Department in July 1960. He was found guilty of the sale, possession and importation of narcotic drugs in violation of federal statutes,[1] and was sentenced to prison for ten years. Officer Hutcherson of the Narcotics Squad of the Department testified that he furnished the money, supplied by the Department, to a special employee named Burnett to make the purchase. He further testified that he saw Burnett hand the defendant the money, and shortly thereafter he observed the latter hand Burnett a packet subsequently found to contain four capsules of heroin. Thus the possibility of entrapment arose.

Burnett denied purchasing narcotics from defendant. He said he knew defendant to be an addict but that he purchased pills from one "Al," using $6.00 given him by Officer Hutcherson and $3.00 given him by defendant, that he and defendant used five of the capsules and he gave the remaining four to Officer Hutcherson, to whom he told what had happened. Defendant took the stand and also denied making the sale to Burnett. He admitted that he was a drug addict and testified that at the time of his arrest he was a patient at the D. C. General Hospital as a result of a voluntary commitment designed to cure his addiction.

The court advised counsel that it would instruct the jury on entrapment. The United States then recalled Officer Hutcherson in rebuttal. Over defense objection he testified that in September 1959 he had observed defendant with a cellophane bag in which he had about fifty or sixty white capsules containing white powder. He continued: "In my [the officer's] automobile he sold to the other addicts in my car capsules from this quantity that he had." He said he had sought then without success to make a purchase from defendant. On cross examination the officer further testified that he had made a report of the incident. The court then recessed to permit the witness and another member of the Department who was present in court, Sergeant Krenitsky, to locate the report. The court reconvened in about 30 minutes, when Officer Hutcherson reported that both he and Sergeant Krenitsky had searched the records of the Narcotics Squad Office but were unable to find a

---

1. 35 Stat. 614 (1909), as amended, 21 U.S.C. § 174 (1958), 21 U.S.C.A. § 174;

68A Stat. 550, 551 (1954), 26 U.S.C. §§ 4704(a), 4705(a) (1958).

report of the incident. He was then cross examined as set forth in the margin.[2]

We first consider appellant's challenge to the instruction given to the jury on the issue of entrapment. As a minor matter we note that the court stated that the two-fold defense, though permissible, was inconsistent. The defenses were alternative but not inconsistent. It was consistent with defendant's denial of the transaction to urge that if the jury believed it did occur the government's evidence as to how it occurred indicated entrapment.

We now come to a more serious matter. When the accused took the stand the Government on cross examination questioned him with respect to his criminal record, consisting of a conviction on three counts of petit larceny in 1951, violation of the Harrison Narcotic Act in 1952, and petit larceny in 1958 and 1960, the latter occurring in Maryland. With this in evidence the court instructed the jury that where the defense is entrapment,

"the law says that if an otherwise innocent person, not inclined to commit a criminal offense, is induced, is led into, is enticed by a police officer to commit a criminal offense, the prosecution can have no benefit from it and he would be not guilty. Understand that I say an 'otherwise innocent person' who would not have committed the crime except for some enticement, or inducement."

The court illustrated by reference to the opinion of the Supreme Court in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, adding:

"you have got to take into consideration the testimony on the part of the Government concerning Hansford's background, * * * you have got to consider that background, the whole of it, in determining whether he was an innocent man who wouldn't have made that sale but for being seduced into doing it."

Defense counsel objected to the reference to Sorrells,[3] saying,

"the jury may get the idea that Sorrell was entirely innocent and, therefore, the defense of entrapment is good against him but would not be good against our man because he has a criminal record. I am afraid that might be prejudicial against my client. * * * You spoke of an innocent man. Did you mean that it was an innocent man never having been convicted of any crime or innocent of this one particular offense?

"The Court: Well, I think I made that plain enough: 'A man who would not have sold narcotics but for the enticement.'

*   *   *   *   *   *

"[Counsel:] Maybe I got the wrong impression, but I was listening to it and I got the impression that it related to a man who was otherwise innocent of anything, any crime.

"The Court: I don't agree."

"The Witness: That is correct.
"The Court: Do you think you made one?
"The Witness: Well some time when I was out working I made reports of incidents, transactions that took place but those that didn't take place, I would tell the sergeant or my supervisor in the office about them but I am not positive I made one on this. I didn't file one."

---

2. "Q. Officer Hutcherson, have you had an opportunity to make a search for that report? A. I had a short period but I didn't find it; a search was made and I didn't find it.
   "Q. You yourself? A. With the Sergeant.
   "Q. Sergeant Krenitsky? A. That's right.
   "Q. And you have searched the records of the Narcotic squad? A. I have looked.
   *   *   *   *   *   *   *
   "The Court: So the short of it is, officer, that you could not find it?

3. The opinion of the Supreme Court in Sorrells indicates that there was evidence Sorrells had been a rumrunner.

▇ The court did not explain to the jury, as here explained to counsel, that the court meant "A man who would not have sold narcotics but for the enticement." The jury could well believe that the defense of entrapment was available only to an innocent man, that is, a man who had no criminal record, and was enticed. Yet that is not the law. In Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, notwithstanding two previous narcotics convictions the Court held that Sherman had been entrapped with respect to the narcotics charge on which he was tried.

▇ The reference of the court to an otherwise innocent man is understandable; for the opinions of the Supreme Court in both Sorrells and Sherman refer several times to the need that the accused be an "innocent" man. Thus, "decoys are not permissible to ensnare the innocent and law-abiding into the commission of crime." Sorrells v. United States, supra 287 U.S. at 445, 53 S.Ct. at 214. But a court opinion is not an instruction to a jury. In these opinions the Supreme Court evidently meant by "innocent," in connection with entrapment, absence of a predisposition or state of mind which readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act for which the accused is charged. As explained in Sherman:

> "At the trial the factual issue was whether the informer had convinced an otherwise unwilling person to commit a criminal act or whether petitioner was already predisposed to commit the act and exhibited only the natural hesitancy of one acquainted with the narcotics trade."

Sherman v. United States, supra 356 U.S. at 371, 78 S.Ct. at 820. Or, as further stated by the Court in Sherman when quoting from Sorrells:

> "Entrapment occurs only when the criminal conduct was 'the product of the *creative* activity' of law-enforcement officials."

356 U.S. at 372, 78 S.Ct. at 821. These statements largely dispel the ambiguity that arises from an unexplained reference to an "innocent" person. If the term "innocent" is to be used at all—it is preferable to avoid its use altogether—it should be explained so that the jury will understand that a criminal record does not disqualify an accused from defending on the ground of entrapment. A person is not entrapped when an officer merely presents him with the opportunity to commit an offense in order to detect criminality rather than to instigate it. But readiness or predisposition is not established by evidence that the person is not "innocent" in that he has a criminal record. Innocent in the context of entrapment means that the defendant would not have perpetrated the crime for which he is presently charged but for the enticement of the police official. The defendant, in such circumstances, must be considered a previously innocent person. A criminal record is relevant in regard to a predisposition or propensity, but does not preclude the defense of entrapment.

The care required in instructing the jury is due to the nature of the defense of entrapment. It involves the conduct of law-enforcement officers in leading another to commit an act defined as a criminal offense. The opinion of Mr. Chief Justice Hughes in Sorrells, supra, refers to this as so "shocking" as to remove the resulting conduct of the accused, though within the literal definition of a criminal offense, from its intendment. The separate opinion of Mr. Justice Roberts, concurred in by Mr. Justice Brandeis and Mr. Justice Stone, would have based the defense on the duty of the courts to protect their processes from being used to convict one of conduct induced by those whose duty it is to uphold the law.[4]

---

4. The opinion of Mr. Justice Roberts states in part:

"Public policy forbids such sacrifice of decency. The enforcement of this policy

When in Sherman the subject was again considered the Court, in an opinion by Mr. Chief Justice Warren, did not feel called upon in the circumstances to reconsider the principles underlying Mr. Chief Justice Hughes' opinion in Sorrells, which ruled that facts showing entrapment remove the conduct from the intendment of the statute though within the statutory language which defines the offense.

The view of entrapment adopted in Sorrells and adhered to in Sherman has several features. First there must be proof of inducement or active participation by the government agent. Second, opportunity is then afforded the prosecution to defeat the claim of entrapment by showing predisposition or readiness on the part of the accused to commit the offense. As stated in Sherman:

> "at trial the accused may examine the conduct of the government agent; and on the other hand, the accused will be subjected to an 'appropriate and searching inquiry into his own conduct and predisposition' as bearing on his claim of innocence."

356 U.S. at 373, 78 S.Ct. at 821.[5]

This "searching inquiry," another feature of the decisions, opens the door to conduct of the accused antedating the charge on trial, thus creating the danger of prejudicially affecting the question of his guilt of the charge on trial. The focus of the case is likely to be drawn away from the conduct of the government agent and concentrated on the prior conduct of the defendant. Deeming this unsound the concurring opinion of Mr. Justice Frankfurter in Sherman, joined by Mr. Justice Douglas, Mr. Justice Harlan and Mr. Justice Brennan, urged again the rationale advanced by Mr. Justice Roberts in Sorrells, that the defense of entrapment should concentrate upon the conduct of the government agent and not upon the issue of predisposition, for otherwise, as the opinion states:

> "The defendant must either forego the claim of entrapment or run the substantial risk that, in spite of instructions, the jury will allow a criminal record or bad reputation to weigh in its determination of guilt of the specific offense of which he stands charged. Furthermore, a test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the underlying reason for the defense of entrapment. No

---

calls upon the court, in every instance where alleged entrapment of a defendant is brought to its notice, to ascertain the facts, to appraise their effect upon the administration of justice, and to make such order with respect to the further prosecution of the cause as the circumstances require.

"This view * * * frankly recognizes the true foundation of the doctrine in the public policy which protects the purity of government and its processes."
287 U.S. at 455, 53 S.Ct. at 217.

The opinion would not permit the jury to determine on the basis of evidence of other offenses, or predisposition, whether the accused was induced, or was simply "detected" by the Government's conduct:
"The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents. No other issue, no comparison of equities

as between the guilty official and the guilty defendant, has any place in the enforcement of this overruling principle of public policy."
287 U.S. at 459, 53 S.Ct. at 219.

5. The evidence by which the Government in Sherman sought to avoid the consequence of its own conduct, by showing that "petitioner was ready and willing to sell narcotics should the opportunity present itself was petitioner's record of two past narcotics convictions," one in 1942, the other in 1946. But the Court said,
"a nine-year-old sales conviction and a five-year-old possession conviction are insufficient to prove petitioner had a readiness to sell narcotics at the time * * * [he was approached by the informer in this case,] particularly when we must assume from the record he was trying to overcome the narcotics habit at the time."
356 U.S. at 375–76, 78 S.Ct. at 822.

matter what the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society." [6]

356 U.S. at 382–83, 78 S.Ct. at 826.

From the nature of the defense of entrapment as indicated by the foregoing discussion the following consequences flow:

■ 1. When the evidence points toward inducement by the Government, as in this case it does due to the use made of Burnett, who had been supplied by the Police Department with funds for the purchase, and the Government then seeks to meet the claim of entrapment by showing predisposition or readiness on the part of the accused to commit the offense, the burden of establishing this reply to the claim of entrapment falls upon the Government. Though the majority opinion in Fletcher, supra note 6, does not go into this matter, it is brought forth in Judge Edgerton's dissent. And in United States v. Masciale, 236 F.2d 601 (2d Cir. 1956), aff'd, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859, the opinion of Judge Hincks, concurred in by Chief Judge Clark, states:

"the burden was on the Government by way of reply to the defense of entrapment, to prove a sufficient excuse for the inducement. United States v. Sherman, 2 Cir., 200 F.2d

880,[1] 882. In that case, this court said:

" 'It is a valid reply to the defence, if the prosecution can satisfy the jury that the accused was ready and willing to commit the offense charged, whenever the opportunity offered.'

"1. In United States v. Sherman, this court gave its considered interpretation of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413. There have since been no developments in this field which suggest that we should now overrule or modify this interpretation of Sorrells then reached. Neither Sherman nor Sorrells hold that proof of a prior conviction, or even direct proof of a prior commission, of the same or of a kindred offense is essential to make out a valid reply to the defense of entrapment."

236 F.2d at 603.

In the earlier case of United States v. Sherman, 200 F.2d 880 (2d Cir. 1952), Judge Learned Hand had said:

"in such cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it."

200 F.2d at 882–83.

■ 2. Another consequence has to do, not with the burden of proof, but with the character of proof. We have

6. Our own court in Trent v. United States, 109 U.S.App.D.C. 152, 153, 284 F.2d 286, 287, cert. denied, 365 U.S. 889, 81 S.Ct. 1035, 6 L.Ed.2d 199, has said:
"The courts have regularly condemned and penalized enforcement by true entrapment procedures. Such methods are universally proscribed,"
citing Sorrells and Sherman. The question of fact as to whether Trent was "innocent" was analyzed in light of the standard of innocence referred to in Sorrells and Sherman but we did not discuss the

problem growing out of the use of the expression in charging the jury, where, especially, the accused is shown to have a criminal record.
In Fletcher v. United States, 111 U.S. App.D.C. 192, 295 F.2d 179, cert. denied, 368 U.S. 993, 82 S.Ct. 613, 7 L.Ed.2d 530, this court again condemned entrapment but found the evidence insufficient to sustain the defense, saying appellant was an "unwary criminal" rather than an "unwary innocent," thus quoting language from Sherman.

seen above that in rebutting the claim of entrapment the Government recalled Officer Hutcherson to the stand. He then testified as to the alleged sales made by defendant which the officer said he had witnessed on an occasion in September 1959.[7] Objection on the ground of non-production of a report about this incident, which, as we have previously pointed out, Officer Hutcherson initially said he had made, need not be considered, for in any event the admission of this evidence was erroneous, and since it was highly prejudicial its admission constitutes ground for reversal. We explain now why we think the evidence was inadmissible.

There is a well settled rule that it is ordinarily reversible error for the trial court to admit evidence of an offense other than the one on trial. Harper v. United States, 99 U.S.App.D.C. 324, 239 F.2d 945. As there pointed out there are exceptions to this rule; and in the present case the exception relied upon by the United States is that when there is sufficient evidence of entrapment to go to the jury the prosecution may answer the claim of entrapment by showing that the defendant was predisposed to commit the offense, so that the situation is not one of entrapment but of readiness on the part of the defendant to take advantage of the opportunity offered to engage in the unlawful conduct. In aid of demonstrating that this is the situation the prosecution may subject the defendant to "an appropriate and searching inquiry into his own con-

duct and predisposition," to quote again the applicable language of Mr. Chief Justice Hughes in Sorrells, 287 U.S. at 451, 53 S.Ct. at 216, repeated by Mr. Chief Justice Warren in Sherman, 356 U.S. at 373, 78 S.Ct. at 821. The problem remains, however, as to the means permissible in this "appropriate and searching inquiry." The separate concurring opinions in the Supreme Court, in both Sorrells and Sherman, have stated that there is such danger to the fairness of a trial in admitting evidence of a previous offense that the inquiry should be limited to the circumstances immediately surrounding the offense which is the subject of the trial. The majority opinions, which bind us, do not so limit the inquiry. But we find nothing in the majority opinions, written by Mr. Chief Justice Hughes in Sorrells and by Mr. Chief Justice Warren in Sherman, which requires us to hold that the evidence of Officer Hutcherson in this case was admissible.[8] And while there are numerous cases, including our own Cratty v. United States, 82 U.S.App.D.C. 236, 163 F.2d 844, in which the courts have described the latitude available to show predisposition as bounded in terms of "reasonable grounds to believe" the defendant was engaged in the sort of conduct involved in the charge on trial, the precise problem as it here arises is not discussed in those cases.[9] Such a general statement as to what is permissible must be considered as descriptive of the end sought rather than as a ruling on the admissibility of particular evidence conducive to that end. It is settled that

---

7. The substance of this testimony is here repeated. The officer said that in September 1959 he had observed defendant with a cellophane bag in which he had about fifty or sixty white capsules containing white powder: "In my automobile he sold to the other addicts in my car capsules from this quantity that he had."

8. As shown by Sherman even prior convictions may be too remote in time to raise a factual issue as to predisposition.

9. A wealth of discussion is found in various comments and notes in 73 Harv.L.Rev. 1333 (1960); 44 Iowa L.Rev. 578 (1959); 33 N.Y.U.L.Rev. 1033 (1958). See, also, Donnelly, Judicial Control of Informants, Spies, Stool Pigeons, And Agent Provocateurs, 60 Yale L.J. 1091, 1098 (1951). And see footnote 1 of United States v. Masciale, supra.

inquiry into the defendant's conduct is permissible; but reason suggests that the danger to the fairness of a trial requires that when the inquiry is into past offenses it be controlled in some reasonable manner.

Applying the above discussion to the facts of the present case, it is seen that here the evidence was principally by one officer, without any corroborating witnesses. The record reveals no available contemporary official report of the incident by the officer. A single alleged incident, nine months prior to the charge on trial, is involved. There was no arrest for the alleged prior offense and thus no indictment or conviction. In these circumstances the defendant had no opportunity to prepare to defend against this other charge and no means of combatting it, save by his own unsupported testimony in denial of the officer's testimony. In this particular factual situation we hold that the testimony of Officer Hutcherson as to the September 1959 incident, not having been corroborated by the production of a contemporaneous report or otherwise substantially corroborated, was so prejudicial to the accused in his defense of the charge on trial as to outweigh the probative value of the testimony on the issue of predisposition. McCormick, Evidence § 59, at 135–36, especially footnote 5 (1954); cf. Grunewald v. United States, 353 U.S. 391, 420–21, 77 S.Ct. 963, 1 L.Ed.2d 931.

Reversed and remanded for further proceedings not inconsistent with this opinion.

PRETTYMAN, Senior Circuit Judge, noted his agreement with the views stated in the foregoing opinion, prior to his retirement from active service.

WILBUR K. MILLER, Chief Judge, and BASTIAN, Circuit Judge, dissent.

Circuit Judge WRIGHT took no part in the consideration or decision of this case.