UNITED STATES of America

v.

**Robert E. RIPPY, Appellant.**

**No. 77–1692.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 29, 1978.

Decided July 2, 1979.

---

William J. Garber, Washington, D.C. (appointed by this Court), for appellant.

Wayne P. Williams, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George and James F. Rutherford, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before TAMM and ROBINSON, Circuit Judges, and OBERDORFER,* United States District Judge, United States District Court for the District of Columbia.

Opinion Per Curiam.

PER CURIAM:

Convicted by a jury on three counts of unlawful distribution of heroin [1] and one count of possession of heroin with intent to distribute,[2] all on testimony of three sales of heroin to an undercover agent, appellant registers a number of complaints. These include contentions that notification of these charges was unreasonably delayed, that Jencks Act [3] sanctions should have been applied against the Government, that entrapment was established as a matter of law, and that prior-crimes evidence was improperly admitted. We find no error warranting reversal and accordingly affirm.

I

■ Appellant asserts that a six-month delay from the date of the first sale to the time at which he was notified of the charges on which he was prosecuted was unreasonable under our *Ross* decision.[4] He adverts particularly to the period from January 14, 1977, when he was arrested for a September 21, 1976 transaction, to his arraignment on February 25, 1977, when he first learned that August 24 and 27, 1976 transactions were also subjects of prosecution. In *Ross*, exercising our supervisory powers over criminal trials in this circuit, we held that narcotics charges must, in some circumstances, be dismissed when there is a significant delay between an undercover agent's detection of criminal activity and notice to the accused of a charge based thereon.[5] We have summarized the contours of this doctrine:

> Cases since *Ross* have attempted to strike the proper balance, mindful that "the risk of conviction of an innocent person" "attributable to the process which led to the verdict of guilt" is the central concern of the *Ross* ruling. Our numerous opinions in the field have addressed the problem in a great variety of factual circumstances. All cases agree that the two prime factors to be considered are the reasonableness of the delay and the resulting harm, if any, to the accused.[6]

Here the Government's justification for the five-month delay from the earliest drug transaction to appellant's arrest is adequate.[7] And although no satisfactory explanation appears for half of the six-week delay between his arrest and arraignment,[8] we perceive no predicate for rejecting the District Court's finding that "there is no showing that it was 'an intentional device

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. 21 U.S.C. § 841(a)(1) (1976).

2. *Id.*

3. 18 U.S.C. § 3500 (1976).

4. *Ross v. United States*, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965).

5. *Id.* at 238–239, 349 F.2d at 215–216.

6. *Robinson v. United States*, 148 U.S.App.D.C. 58, 62, 459 F.2d 847, 851 (1972) (footnotes omitted).

7. The Government represents, without contradiction by appellant, that the undercover agent was investigating other dealers at the time, and thus needed to remain under cover. Brief for Appellee at 52–53. As we have stated, "[j]ustification for delay is measured largely . . .

by the desirability of keeping the undercover agent's identity secret to enable him to track down as many narcotics traffickers as possible while he is useful." *Robinson v. United States, supra* note 6, 148 U.S.App.D.C. at 62–63, 459 F.2d at 851–852. In this case, delay was even further justified because the agents were utilizing their contacts with appellant to identify his supplier. Brief for Appellee at 40.

8. The Government suggests that the decision on whether to expose an informant, who was not involved in the September sale, had not been made when appellant was arrested on January 14, 1977. Brief for Appellee at 53 n. 57. That decision was reached at least by February 3, however, when the charges against appellant were laid before the grand jury. Trial Transcript (Tr.) Apr. 27, 1977 at 18–24. The Government's explanation thus does not cover the period from February 3 to the February 25 arraignment.

to gain a tactical advantage over the accused.' "[9]   Even assuming that the latter interval was on other grounds unreasonable, we are nonetheless constrained to affirm because there has been no demonstration of harm to appellant.

We are advertent to the consideration that

> [i]t is possible in the *Ross*-type cases to distinguish two general types of prejudice, sometimes called "special circumstances," which may be attributable to pre-arrest delays. The first, which the court initially confronted in *Ross*, is damage to the accused's ability to present a defense because of, *inter alia*, his own or his witnesses' lack of memory concerning his actions, . . . his inability to establish an alibi, . . . or unavailability of witnesses who, but for the delay, otherwise might have been able to contradict the Government's case. . . .
>
> A second, similar category of prejudice relates . . . to . . . the reliability of the evidence used to identify the accused.[10]

In the first place, however, the danger of misidentification is clearly minimal here. Though appellant took the witness stand he did not deny participation in the drug transactions, and the Government's identification was based on multiple, extended encounters with the undercover agent and was strongly corroborated by an informant.[11]   Nor are there persuasive indications that delayed notification impaired appellant's ability to present whatever defense he might have had.   Although he avowed that he could not specifically recall the dates on which the drug transactions occurred, he did testify in considerable detail about his several meetings with the undercover agent;[12]   beyond his general claim of inability to remember dates, he has cited no "special circumstances"[13] connoting prejudice.   We think, then, that under all of the circumstances any inference of injury resulting from the delay is far too attenuated to achieve decisional significance.

## II

■  Another of appellant's complaints in that the Government should have been penalized for its failure to turn over to his counsel the undercover agent's notes on a visit paid to appellant's home prior to the first sale.   The Jencks Act specifies that, after a Government witness has testified on direct examination, extrajudicial statements of the witness relating to the subject matter of the testimony must be produced on motion.[14]   The Act also provides for sanctions, including striking the testimony of the witness and declaring a mistrial, if the Government "elects not to comply with an order of the court . . . to deliver [the materials] to the defendant . . . ."[15]

In this case, the visit in question was first specifically mentioned by a Government informant on cross-examination.[16]   The undercover agent's initial reference to the visit came during the Government's rebuttal,[17] and the Government, at the request of defense counsel, turned over the agent's notes on the visit in advance of cross-examination on the agent's rebuttal testimony.[18]   Thus, within the context of that testimony, the Government fully complied with the requirements of the Act.

Appellant contends, however, that the notes should have been released prior to

---

**9.** *United States v. Rippy*, Crim. No. 77–00095 (memorandum order June 20, 1977), at 2 (citation omitted).

**10.** *United States v. Jones*, 173 U.S.App.D.C. 280, 287, 524 F.2d 834, 841 (1975).

**11.** Tr. June 28, 1977 at 134–138, 145–158.

**12.** Tr. June 28, 1977 at 12–20, 48–68.

**13.** See text *supra* at note 10.

**14.** 18 U.S.C. § 3500(b) (1976).

**15.** 18 U.S.C. § 3500(d) (1976).

**16.** Tr. June 29, 1977 at 195–200.

**17.** Tr. June 29, 1977 at 30–43.

**18.** Tr. June 30, 1977 at 35–36.

cross-examination of the agent during the Government's case-in-chief, but this argument meets two obstacles. The agent's initial testimony did not directly refer to the visit in question,[19] and defense counsel did not move for production of Jencks Act statements before cross-examining the agent on that testimony.[20] Moreover, even if we could read the agent's initial testimony so broadly as to include the pre-sale visit as a subject, and even if no motion was necessary in light of the prosecutor's assurances that all relevant material had been released,[21] we remain unable to hold that sanctions should have been imposed. We have held that the Jencks Act does not contemplate automatic sanctions even when the material has been rendered completely unavailable through loss or destruction. Rather, the trial court is required to "weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial, in order to come to a determination that will serve the ends of justice." [22]

In the instant case, since the notes were eventually produced, appellant's lament goes only to the possible effect of delay in that regard on his trial preparation and strategy. The District Court specifically determined that in view of the lack of contact between the agent and appellant during the pre-sale visit, appellant was not prejudiced by the delay in relinquishment of the notes.[23] Particularly in light of the strong evidence of guilt adduced at trial and the lack of any indication of bad faith on the part of the Government,[24] we have no cause to disagree with the court's assessment.

### III

Entrapment was urged as a defense to the three counts of distributing heroin. The District Court submitted that defense to the jury under instructions accurately incorporating the governing legal principles.[25] Appellant argues that the court should have resolved the matter itself, but we think not. "Entrapment as a matter of law is established only where the testimony is *undisputed* that a person having no predisposition to commit offenses of the kind complained of was induced to do so by the trickery, persuasion, or fraud of a Government agent." [26] The only uncontroverted aspect of the entrapment claim in

---

**19.** The only mention the agent made on direct and redirect examination concerning earlier contacts with appellant was to deny having spoken to him, Tr. June 28, 1977 at 50–53, or having been in his company, Tr. June 28, 1977 at 128, prior to the August 24 drug sale.

**20.** Tr. June 28, 1977 at 42.

**21.** Tr. June 24, 1977 at 6; Tr. June 30, 1977 at 23.

**22.** *United States v. Bryant*, 142 U.S.App.D.C. 132, 133, 439 F.2d 642, 653 (1971); accord, *United States v. Perry*, 153 U.S.App.D.C. 89, 94–98, 471 F.2d 1057, 1062–1066 (1972).

**23.** Tr. June 30, 1977 at 53–54.

**24.** Because the prosecutor was unaware of the agent's visit or of his notes on the subject, he could not have been guilty of bad faith in failing to release the material in a more timely fashion. We recognize, however, that "the Jencks Act refer[s] . . . to evidence gathered . . . by 'the United States,' not simply that held by the prosecution." *United States v. Bryant, supra* note 22, 142 U.S.App. D.C. at 140, 439 F.2d at 650. But although the undercover agent may have been presumptuous in taking it upon himself to determine the relevance of the pre-sale visit, we are unable to find that his omission to mention the visit or notes to the prosecutor was in bad faith in light of the marginal utility of this evidence to either side.

*United States v. Kasouris*, 474 F.2d 689 (5th Cir. 1973), relied on by appellant, is readily distinguishable. There the prosecutor initially denied the existence of a statement by a prosecution witness after it was specifically requested by the accused, thus manifesting bad faith, and the trial court found that the Government's tardy production of the statement was highly prejudicial. *Id.* at 691–692.

**25.** Tr. June 30, 1977 at 104–107.

**26.** *United States v. Martinez*, 429 F.2d 971, 976 (9th Cir. 1970), *cert. denied*, 401 U.S. 915, 91 S.Ct. 894, 27 L.Ed.2d 815 (1971) (emphasis added). See *Matthews v. United States*, 115 U.S. App.D.C. 339, 341, 319 F.2d 740, 742, *cert. denied*, 375 U.S. 943, 84 S.Ct. 351, 11 L.Ed.2d 274 (1963). *Cf. Johnson v. United States*, 115 U.S.App.D.C. 63, 66, 317 F.2d 127, 130 (1963).

this case was that in each of the three episodes charged, the undercover agent importuned the sale of drugs. Solicitation alone, however, does not establish entrapment,[27] nor is it illegitimate for the Government to set a "trap for the unwary criminal."[28] Both appellant's predisposition[29] and the degree of governmental inducement[30] were centers of dispute at trial, and the court properly submitted the entrapment issue to the jury for resolution.

## IV

■ Our attention is also drawn to the admission of testimony by a Government informant that appellant had sold heroin to him and others, and that on one occasion the informant had seen appellant's friends "cutting up dope" in appellant's house.[31] We note, however, that previously on direct examination appellant had been asked, "Did you deal in drugs yourself?" and that he had answered, "No, sir, I did not."[32] The objected-to evidence, introduced during the Government's rebuttal, was plainly appropriate as a contradiction of that claim.[33]

It was material, too, on the issue of predisposition. Once the accused, by raising the defense of entrapment, has brought his state of mind into issue, evidence of prior similar crimes may become admissible.[34] Here the informant's testimony on earlier sales bore heavily on appellant's inclination to peddle drugs, and its relevance on that score clearly outweighed its prejudicial impact.[35] The "cutting up dope" testimony

27. *E. g., United States v. Burkley*, 192 U.S.App. D.C. 294, 302–306, 591 F.2d 903, at 911–915 (1978); *United States v. DeVore*, 423 F.2d 1069, 1071–1072 (4th Cir. 1970), *cert. denied*, 402 U.S. 950, 91 S.Ct. 1604, 29 L.Ed.2d 119 (1971).

28. *Sherman v. United States*, 356 U.S. 369, 372, 78 S.Ct. 819, 821, 2 L.Ed.2d 848, 851 (1958).

29. Appellant's predisposition to deal in drugs was clearly in dispute at trial. Appellant claimed that he never did so before. Tr. June 29, 1977 at 19–21. The Government, in turn, introduced testimony that in fact appellant had previously done so. Tr. June 29, 1977 at 136–138. The Government also points to appellant's access to high-grade heroin, Tr. June 27, 1977 at 92, and to his initiative in continuing the relationship with the undercover agent, Tr. June 29, 1977 at 33–34, 36, as additional evidence of appellant's predisposition.

30. The evidence presented at trial did not establish as a matter of law that the Government overreached in its solicitation of drugs from appellant. Although the Government initiated purchases of drugs from appellant on several occasions, he admitted that when he first attempted to secure heroin for the undercover agent, the latter had not shown him any money nor had the agent or the informant made any promises or in any way pressured or threatened appellant. Tr. June 29, 1977 at 69, 90. Nor does the evidence indicate that appellant hesitated or showed reluctance to negotiate with the agent concerning drug deals. Tr. June 28, 1977 at 7–9; Tr. June 29, 1977 at 23–24, 26, 59.

31. Tr. June 29, 1977 at 232.

32. Tr. June 29, 1977 at 20.

33. *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); see generally, McCormick, Evidence § 191 (2d ed. 1972).

34. See *Osborn v. United States*, 385 U.S. 323, 332 n. 11, 87 S.Ct. 429, 434 n. 11, 17 L.Ed.2d 394, 400–401 n. 11 (1966); *Sherman v. United States, supra* note 28, 356 U.S. at 373, 78 S.Ct. at 821, 2 L.Ed.2d at 851; *United States v. Bailey*, 164 U.S.App.D.C. 310, 313 & n. 7, 505 F.2d 417, 420 & n. 7 (1974), *cert. denied*, 420 U.S. 961, 95 S.Ct. 1350, 43 L.Ed.2d 438 (1975); Annot., 61 A.L.R.3d 293 (1975).

The result is no different under the Federal Rules of Evidence. The Advisory Committee's Note to Rule 404, which governs the admissibility of character evidence, states that when "[c]haracter . . . itself . . . [is] an element of a crime, claim, or *defense* . . . [n]o problem of the general relevancy of the character evidence is involved, and [Rule 404] therefore has no provision on the subject." (emphasis added). Because character is clearly an element of the entrapment defense, Rule 404 does not bar its admissibility.

35. The relevance of other-crimes evidence is *always* to be balanced against its prejudicial effect in the process of determining admissibility. Fed.R.Evid. 403. Thus, in *Hansford v. United States*, 112 U.S.App.D.C. 359, 303 F.2d 219 (1962), a police officer's uncorroborated testimony concerning a prior sale of narcotics was rejected because its probative value on the issue of predisposition was substantially outweighed by its prejudicial effect. *Id.* at 365–366, 303 F.2d at 225–226. *Hansford*, however, does not control because the holding in that case was expressly limited to its "particular factual situation," *id.* at 366, 303 F.2d at 226, which is distinguishable from that in the case

was hardly much less pertinent, and its prejudicial effect was tempered when the District Court admonished the jury to disregard it completely.[36] We conclude that the court did not err in this regard.

None of appellant's claims on appeal portending reversible error, the judgment of conviction is

*Affirmed.*

at bar. In *Hansford* "the informer denied making the purchase. Predisposition was claimed from a single offense occurring nine months previous to the offenses charged. The only evidence to support the conviction, including the defendant's predisposition to deal in drugs, was the uncorroborated testimony of the narcotics agent which contained inconsistencies and other matter seriously affecting his credi-

bility." *United States v. Cooper,* 321 F.2d 456, 458 (6th Cir. 1963.) Here, the trial court found some corroboration of the predisposition evidence in appellant's own testimony. Tr. June 30, 1977 at 16–18. Moreover, there is no evidence here, as there was in *Hansford,* that the witness to the prior drug sale lacked credibility.

**36.** Tr. June 29, 1977 at 239.