

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-18-2005

# USA v. Neely

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4701

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Neely" (2005). *2005 Decisions*. Paper 1347.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1347

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4701

UNITED STATES OF AMERICA

v.

HORACE NEELY

Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 01-cr-00296-2)
District Judge: Honorable Mary A. McLaughlin

Submitted Under Third Circuit LAR 34.1(a)
April 4, 2005

Before: BARRY, AMBRO and COWEN, Circuit Judges

(Filed: April 18, 2005)

OPINION

AMBRO, Circuit Judge

Horace Neely appeals his conviction and sentence for violations of 21 U.S.C.

§ 841(a)(1) (possession of a controlled substance with the intent to distribute) and 21

U.S.C. § 860 (possession of a controlled substance with the intent to distribute within 1,000 feet of a school). We affirm the conviction but vacate the sentence and remand for resentencing.

## I. Factual Background and Procedural History

Because we write solely for the parties, we set forth only those facts relevant to this appeal. In December 2000 Agent Claude Thomas, an undercover narcotics investigator with the Pennsylvania Office of Attorney General, began investigating Richard Rios, a Philadelphia cocaine dealer. Agent Thomas learned about Rios from an informant, Derrick Proctor, who was also Neely's brother-in-law. Proctor was unable to set up a meeting between Thomas and Rios. Thus, at Thomas's request, Proctor agreed to ask Neely for Rios's phone number. Thomas testified that he told Proctor to describe him to Neely as a record producer named Rock who was interested in purchasing large quantities of cocaine from Rios.

In mid-December 2000 Proctor called Neely and asked for Rios's phone number. Neely testified that Proctor told him that some people from the junior black mafia were trying to get into the drug business. Neely also stated that he did not want to give Proctor the number. According to Thomas, Proctor told him that Neely wanted to speak to him personally. Thomas subsequently called Neely on December 12, 2000. He testified that Neely told him he could supply the large quantities of cocaine and crack cocaine that he understood "Rock" was looking for. Neely, on the other hand, testified that he told

2

Thomas that he did not want to get involved.

Thomas recounted that he spoke with Neely multiple times the next day, and Neely tried to arrange a cocaine deal.[1] Eventually Neely told Thomas that the deal had fallen through. After this, Thomas made periodic attempts to call Neely and spoke with him a couple of times in an effort to build a friendly relationship with Neely. (These phone calls occurred at an apparently difficult time in Neely's life—when he had recently lost his job and had problems with his marriage.) Thomas stated that, when the two discussed drugs, Neely used "street terminology for narcotics." Neely, however, did not offer to give Thomas Rios's phone number in the course of these conversations.

On January 14, 2001, Thomas spoke again with Neely, who told Thomas that he would communicate with his supplier and get back to Thomas about a potential drug transaction. Thomas testified that Neely called him later that day and told him that his supplier was ready to sell the narcotics and that the transaction would occur the following day. According to Thomas, Neely spoke with him several times the next day to confirm the transaction and inform him of the amount of cocaine that was available.

That evening, Thomas met Neely, and Neely drove him to Rios's house. Neely remained inside Rios's house during the transaction. Thomas left the house to get money to pay for the drugs and gave an arrest signal to other agents stationed outside. Neely and Rios were then arrested.

---

[1] Neely, however, countered that he did not speak to Thomas again until Christmas Day.

A grand jury returned an eight-count indictment against Neely and Rios. Before his trial, Neely served notice of his intent to mount an entrapment defense. Rios pleaded guilty prior to trial and agreed to testify against Neely. Neely's first trial ended in a mistrial after the jury declared itself deadlocked.

At Neely's second trial, Rios testified, <u>inter alia</u>, that he had previously sold Neely cocaine, including nine ounces of cocaine approximately two months prior to their arrests. Rios stated that Neely told him he intended to sell the nine ounces of cocaine for a profit. Rios also testified that, about one month before their arrests, Neely came to his house and purchased a kilogram of cocaine, also for resale.

The jury, which had been instructed on Neely's entrapment defense, found him of violating 21 U.S.C. §§ 841(a) and 860 and acquitted him of various other charges. Neely was sentenced to 78 months imprisonment and five years of supervised release. Neely now appeals from his conviction and sentence.[2]

## II. Discussion

Neely argues first that his conviction cannot stand because the Government's coercive conduct was so outrageous that it violated his due process rights. We have held that "the defense of outrageous government conduct is based on an alleged defect in the institution of the prosecution itself." <u>United States v. Pitt</u>, 193 F.3d 751, 760 (3d Cir. 1999). Therefore, this defense must be raised in a pre-trial motion "unless the evidence

_____

[2]We have jurisdiction pursuant to 28 U.S.C. § 1291.

4

supporting the claim of outrageous government conduct is not known to the defendant prior to trial." Id.; see also Fed. R. Crim. P. 12(b)(3)(A) (stating that "a motion alleging a defect in instituting the prosecution" must be made before trial).

It is apparent from the record that Neely knew of the alleged "outrageous conduct" in this case—namely, Thomas's acts in speaking with him and inducing him to commit a crime during an apparently difficult time in Neely's life—before trial because he filed a pre-trial notice that he planned to mount an entrapment defense which would, of course, be based on that same conduct. In addition, Neely certainly would have known about the allegedly outrageous conduct before his second trial after hearing the evidence the Government presented at his first trial. Accordingly, Neely waived his outrageous government conduct defense by failing to raise it in a pre-trial motion.[3] See Fed. R. Crim. P. 12(e) (providing that "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c)" for the filing of pre-trial motions); cf. Pitt, 193 F.3d at 760 (holding that defendant had waived his outrageous government conduct defense when he failed to raise it prior to trial and had "no good explanation" for his failure to do so).

Second, Neely argues that the evidence presented by the Government at trial was

_____

[3]In any event, we doubt the success of Neely's arguments on this issue. Among other things, United States v. Twigg, 588 F.2d 373 (3d Cir. 1978), the main case on which Neely relies, has been called into doubt. Pitt, 193 F.3d at 761 n.11; see also United States v. Gambino, 788 F.2d 938, 945 n.6 (3d Cir. 1986) (same).

5

insufficient to rebut his entrapment defense—specifically, that the Government's evidence to prove Neely's predisposition to commit the crimes with which he was charged beyond a reasonable doubt was lacking. Because Neely did not file a timely motion for judgment of acquittal, we review this argument under the plain error standard. See United States v. Powell, 113 F.3d 464, 466–67 (3d Cir. 1997). We must look at "the sufficiency of the evidence in the light most favorable to the Government[] and credit all reasonable inferences that support the verdict[]." United States v. Perez, 280 F.3d 318, 342 (3d Cir. 2002). Put another way, we will sustain the verdict "if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (internal quotation omitted).

An entrapment defense has two elements. The defendant must prove: "(1) government inducement of the crime, and (2) a lack of predisposition on the part of the defendant to engage in the criminal conduct." United States v. Wright, 921 F.2d 42, 44 (3d Cir. 1990) (citing, inter alia, Mathews v. United States, 485 U.S. 58, 63 (1988)). "After the defendant has made this showing, . . . the government then has the burden of proving beyond a reasonable doubt that it did not entrap the defendant." Id. (internal quotation omitted).

Neely asserts that the Government's evidence as to his predisposition to commit the drug offenses for which he was convicted was insufficient because the only evidence of predisposition put on by the Government at trial "was the uncorroborated testimony of

6

. . . Rios, a paid government informant and an admitted drug dealer." Br. at 13. The fact that Rios's testimony was uncorroborated does not, by itself, require us to overturn the conviction. See Perez, 280 F.3d at 344 (stating that "uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction" (internal quotation and citations omitted)).[4]

Rios testified that Neely had twice bought cocaine from him with the intent to resell it before the events at issue in this case occurred. Rational jurors could have chosen to credit his testimony over Neely's, and it is not our role to disturb such credibility determinations. See United States v. Johnson, 302 F.3d 139, 149–50 (3d Cir. 2002), cert. denied, 537 U.S. 1140 (2003). This is particularly true where, as here, the defendant had an opportunity to cross-examine the cooperating witness and elicit testimony regarding

---

[4]Neely's reliance on United States v. Hansford, 303 F.2d 219 (D.C. Cir. 1962), for the proposition that uncorroborated testimony regarding a defendant's prior bad acts should not be admitted to rebut an entrapment defense is misplaced. Hansford merely stands for the well-settled principle that the probative value of such testimony must be weighed against its prejudicial value; it does not hold that such testimony is always inadmissible. Id. at 225–26 (holding that the admission of the uncorroborated testimony of a police officer regarding an alleged prior offense was in error because that testimony was highly prejudicial when, among other things, the officer was unable to produce any contemporaneous report of the prior incident). In addition, Neely is not challenging the admissibility of Rios's testimony. He is challenging its persuasiveness. Thus, Hansford is off point. Moreover, as the Government points out, the D.C. Circuit Court later noted that Hansford was "expressly limited to its 'particular factual situation.'" United States v. Rippy, 606 F.2d 1150, 1155-56 n.35 (D.C. Cir. 1979) (holding that a government informant's testimony regarding the defendant's prior drug sales was probative of the defendant's inclination to sell drugs and that its admission was not error because, inter alia, the defendant put his state of mind at issue by raising an entrapment defense).

the witness's interaction and arrangements with the Government.[5] Cf. Perez, 280 F.3d at 344–45. Moreover, Thomas's testimony also indicated Neely's willingness to engage in the drug transaction at issue. Cf. Gambino, 788 F.2d at 945 (stating that the Government may prove propensity by, among other things, showing that the defendant exhibited "a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement" (internal quotation omitted)). In sum, looking at the evidence in the light most favorable to the Government, it presented sufficient evidence as to Neely's predisposition to commit the crimes with which he was charged, thus defeating his entrapment defense.

### III. Sentencing

Neely also challenges his sentence based on the Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 738 (2005). Having determined that the sentencing issues Neely raises are best determined by the District Court in the first instance, our protocol is to vacate the sentence and remand for resentencing in accordance with Booker.

\* \* \* \* \*

Because Neely's arguments that his conviction should be overturned are unavailing, we affirm his conviction. His sentence, on the other hand, is vacated, and the

---

[5]On cross-examination, Neely's counsel obtained testimony from Rios regarding his drug dealing activities, his criminal history, and his plea agreement with the Government (App. at 250–60).

case is remanded for resentencing.