UNITED STATES of America, Appellee,

v.

Harvey Allen PLACE, Jr. and William Canty, Appellants.

No. 164, Docket 24784.

United States Court of Appeals Second Circuit.

Argued Nov. 14, 1958.

Decided Feb. 19, 1959.

628

Joseph Calderon, New York City, for appellant Place.

Maurice N. Nessen, New York City, for appellant Canty.

Richard A. Green, Asst. U. S. Atty., for Southern District of New York, New York City (Arthur H. Christy, U. S. Atty., and Gideon Cashman, Asst. U. S. Atty., S. D. N. Y., New York City, on the brief), for the United States.

Before HINCKS, LUMBARD and MOORE, Circuit Judges.

HINCKS, Circuit Judge.

The defendants Place and Canty were tried and convicted by a jury upon an indictment containing two counts, the first charging possession, concealment and transportation of narcotics in violation of 21 U.S.C.A. §§ 173 and 174, the second a conspiracy to violate, in addition to §§ 173 and 174 of Title 21, Title 26 U.S.C.A. §§ 4701, 4703, 4704(a), 4724 (c) and 4771(a).[1]

At the trial, there was evidence of the following facts. During the early part

1. Code of 1954.

of 1955 Place, who maintained two apartments in New York City, 53 West 75th Street and 118 West 80th Street, had been selling heroin with some regularity to another addict, Patricia Schimanskey, who came from Hartford, Conn. In addition to personal use, Schimanskey carried packages of narcotics to Hartford for Place's customers in that city. Both Schimanskey and defendant Canty acted as runners for Place and made frequent deliveries and pick-ups for him in New York City.

On May 16, 1955 Ernest Manning, a government informer (special employee), who had previously pleaded guilty to narcotics charges and was awaiting sentence, telephoned Place telling him that a friend from Schenectady, "Sheik" Davis (actually a government agent), wanted to buy two ounces of heroin from Place. To fill this and one other order Place planned to buy one ounce of pure heroin. That evening Davis and Manning drove to Place's 80th Street apartment. Manning alone entered the apartment and Place told him that he would get the drugs but he wanted to get a small supply for himself. Place, Manning and Davis then drove around for about half an hour during which time they discussed Davis' proposed purchase of two ounces of heroin. Pursuant to an agreement then reached between Davis and Place, Place, on return to his apartment, arranged to receive a supply of heroin intended for Davis and another customer and sent Canty and Schimanskey to pick up this supply. The sale to Davis, after payment of $300 to Place through Manning, was finally consummated on the following afternoon, May 17, when Manning at a drug store to which Place had directed him picked up a package of heroin which he immediately turned over to Davis, the agent, who was waiting outside in his automobile.

At the trial, as here, the major contentions center around the part played by Manning in the transaction underlying these convictions. The defendants sought to maintain the defense of entrapment. They also asserted as a defense the illegal conduct of Manning, the Government's special employee, in providing Place with narcotics for his personal use; this illegal conduct, it was maintained, precluded prosecution for the crimes committed by the defendants which so shortly followed.

██ First, as to the defense of entrapment. The defendants, now on appeal, contend that the issue of entrapment was one for the judge, relying for that position on the dissenting opinion in Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859. They posit error on the judge's action in submitting the issue to the jury. We think the law in its present state is to the contrary and hold that when the state of the evidence is such as to create an issue of fact, the issue is one for the jury. Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413; Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, and Masciale v. United States, supra. In this case, however, we find no evidence whatever of entrapment. There was a wealth of uncontradicted evidence that both defendants were thoroughly predisposed to violate the narcotics laws, were currently and continuously dealing in narcotics, and that Place, indeed, had supplied narcotics to Manning before the latter had volunteered to serve as an informer. There was no evidence that the sale charged was "the product of the creative activity" of Davis or Manning or any other Government agent, or that the agents went further than to "afford opportunities or facilities for the commission of the offense," within the meaning of the cases above cited. Unlike the defendant in the Sherman case, the defendants here were not innocent parties seeking to break themselves of the narcotic habit and to avoid commercial traffic herein. And unlike the defendant in the Masciale case, the defendants here did not take the stand and infuse a color of plausibility into the defense of entrapment which made it a question for the jury. All in all, on the evidence there was as to this defense no genuine issue of fact and the defense

should have been overruled as a matter of law. United States v. White, 2 Cir., 223 F.2d 674; Rodriquez v. United States, 5 Cir., 227 F.2d 912; cf. United States v. Chiarella, 2 Cir., 184 F.2d 903. The defendants could not possibly have been prejudiced by the submission of the issue to the jury.

■ We hold also that there was insufficient evidence to support the defense that the prosecution of the indictment was precluded by the misconduct of a Government agent. For purposes of this holding we do not overlook the fact that there was evidence in the record from which the jury might have found that within 24 hours of the commission of the crime charged the defendant Place, who was suffering from "withdrawal" symptoms, twice gave Manning a small sum, $5 and $10, and requested him to procure some narcotics for his personal use, and that Manning complied. And we agree with the appellants in their contention that whether or not these acts by Manning were known or authorized by Government agents is immaterial; in either event we think that for its bearing on its right to prosecute the Government must be held responsible for what Manning did to facilitate the sale. Sherman v. United States, supra. Even so, the evidence was insufficient to require submission of the defense to the jury.

For the rule which the defendants invoke is a rule dealing with the exclusion of illegally obtained evidence, and is a question solely for the court. McNabb v. United States, 318 U.S. 332, at page 346, 63 S.Ct. 608, at page 615, 87 L.Ed. 819; see Sherman v. United States, supra, 356 U.S. at page 369, 78 S.Ct. at page 819. The rule stems from the dissenting opinion in Olmstead v. United States, 277 U. S. 438, 48 S.Ct. 564, 575, 72 L.Ed. 944. There Mr. Justice Holmes expressed the view that "apart from the Constitution the government ought not to use evidence obtained and only obtainable by a criminal act." Although the doctrine has been considerably developed since that time, we are aware of no cases in which it has been applied where there was not a close causal relationship between the illegal conduct and the evidence obtained. "Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may have become so attenuated as to dissipate the taint." Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307; Gregory v. United States, 97 U.S. App.D.C. 305, 231 F.2d 258.

The defendants object that the trial judge unduly limited their cross-examination of the witness Schimanskey, when they were attempting to establish this required causal connection by showing that Place would have been physically unable to bring about the sale without the stimulation of the narcotics which Manning provided. We think, however, that only incompetent evidence was excluded in Schimanskey's cross-examination and Manning's direct testimony as to this when called by the defense was restricted not at all. Moreover, there was uncontradicted evidence that before Manning made the first $5 purchase for Place, Place did go out with Davis and discuss business with him at some length. We think it would have been capricious to find, especially in view of the evidence as to Place's traffic in narcotics, that Manning's $5 purchase for Place, even assuming it to have taken place as the appellants contend, caused Place's $300 sale to Davis less than 24 hours later or was a clue which led to the evidence of that sale. We conclude that the evidence in this case was not such as to bring into play the rule which the defendants invoke.

■ The two other contentions raised by the defendants relate to the testimony of Manning, who was called by them as a witness. Upon cross-examination, the Government, in order to avoid a possible inference that its failure to call Manning was because his testimony would have been unfavorable, sought to elicit testimony that Manning had been unwilling to testify for the prosecution, because of

fear of threatened retaliation to himself in Atlanta Penitentiary, and to his family in New York. The defense objected, and the judge immediately informed the jury that the prosecution made no claim that the defendants were the source of the alleged threats. We think the cross-examination was not improper. In any event, the instruction, clearly and promptly given by the judge, cured any possible error.

■ Finally, the defendants claim that the judge erred in denying their motion to compel the prosecution to submit for their inspection and possible use for impeachment purposes "all statements, however recorded, made to any agent of the Federal Government of [sic] this witness," Manning, who was called by the defendant Place after the Government had rested. After Manning's direct examination by Place, which was restricted to the two transactions in which he provided "shots" for Place, his cross-examination by the Government covered a distinctly wider range. The motion invoked the rule of Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. But in Jencks the problem related to two witnesses who had testified that they had made reports to Government agents and the rule was applied only to such reports. It was held, to be sure, that to have inspection a defendant need not lay a foundation by showing that the reports contained impeaching material. But it was at least implicit in the rule that a defendant must lay a foundation by showing that such reports had been made. Indeed, the Jencks case quotes with approval the observation made in Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447, that the necessary essentials of a foundation are that "[t]he demand was for production of * * * *specific documents and did not propose any broad or blind fishing expedition* * * *."* (Emphasis taken from the Jencks opinion.) [353 U.S. 657, 77 S.Ct. 1012.]

There was nothing in the trial record of this case to show that Manning had made statements, either written or re-corded, to Government agents other than the one signed by Manning which the prosecutor had in court and had used in an effort to refresh Manning's memory. This statement was exhibited to the defense and fully inspected. Unlike the situation in Jencks, in Gordon v. United States, supra, in United States v. Tellier, 2 Cir., 255 F.2d 441, and in Lohman v. United States, 6 Cir., 251 F.2d 951, the witness expressly denied having made any statements written by himself. And there was nothing to show that any oral statements to agents had been recorded. Consequently, for complete lack of seasonable showing of disclosable material, we hold that the Jencks rule was not applicable and that denial of the defendants' motion, was right. This holding makes it unnecessary to decide whether the motion could have been rightly denied on the ground that Manning was first called to testify, as we noted above, not by the Government, which had rested, but by the defendant Place.

The thanks of the Court is due to Messrs. Calderon and Nessen, who under assignment by the Court gave the defendants, both on appeal and at trial below, exceedingly able and imaginative representation.

Affirmed.