**Hosley BERRY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17752.**

United States Court of Appeals
District of Columbia Circuit.

Argued July 2, 1963.

Decided Sept. 19, 1963.

Mr. Reed Miller, Washington, D. C. (appointed by this court) for appellant.

Mr. Robert D. Devlin, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Victor Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before DANAHER, BURGER and WRIGHT, Circuit Judges.

DANAHER, Circuit Judge.

This appellant was convicted on six counts of violations of the narcotics statutes, 26 U.S.C. §§ 4704(a) and 4705(a) and 21 U.S.C. § 174. Thereafter an information was lodged setting out his 1954 narcotics conviction and upon his acknowledgement of that record, Berry was sentenced to serve ten years[1] on each count, all sentences to run concurrently, with a recommendation that he be sent to Lexington, Kentucky, for treatment.

On December 19, 1961 about one p. m., one Garrett, a Baltimore police officer was working "under cover" with Federal narcotics officers investigating narcotics traffic in Washington. That day, accompanied by one Hodge, Garrett entered an area much frequented by narcotics violators and addicts. Garrett had never met the appellant, but Hodge testified that for six or eight months, or more, he had been acquainted with the appellant. Berry was waiting for a street light to change at 13th and U Streets when Garrett and Hodge walked up to him. Hodge in the jargon of the narcotics underworld asked Berry if he had narcotics for sale and received an affirmative answer. Berry asked Hodge what he wanted. When told 15 capsules, Berry brought out a chewing gum wrapper,

---

1. As a second offender, Berry could have received a sentence of not less than ten nor more than forty years on each of four of the counts, and not less than five nor more than twenty years on each of the other two counts.

counted out 15 capsules and handed them to Hodge. Hodge paid Berry $22.50, and then asked Garrett how many he wanted. Garrett answered six capsules. Berry counted out the required number, poured them into Garrett's hand, and received $9 as the price. These two episodes predicated the indictment, the first three counts involving the Hodge 15-capsule transaction, with counts four, five and six pertaining to the six capsules of heroin sold to Garrett. Both Hodge and Garrett testified and were cross-examined in complete detail as to their own status and identity and as to Berry's possession, concealment and sale of the 21 capsules. Berry did not take the stand.

■ Handicapped by the odds against him in that state of the evidence, court-appointed trial counsel sought to found a claim that the arrest warrant was insufficient.[2] As a matter of tactics, he tried to becloud Garrett's identification of Berry, developing on cross-examination that Garrett had learned Berry's name from a photograph in possession of the authorities. But the prosecutor had interrupted and sought to prevent any possible reference to the photograph. In a bench conference, the trial judge cautioned counsel not to pursue his line of questioning as it might turn out to be harmful. But counsel believed, he said, that he could "tie it in with one of the theories of the defense we have." Surely he is not now in position to complain when the witness finally answered that at the Bureau of Narcotics he "was shown a picture of Mr. Berry."[3] The answer was definitely germane to the very questions defense counsel was pressing. To inject an additional element of the doubt which counsel was seeking to raise, he brought out—and argued to the jury—that Berry on some unidentified charge had been in jail from March 3,

1961, to December 12, 1961. Thus Hodge could not have seen Berry a matter of some two weeks before December 19, 1961, as Hodge had testified. The defense asked the jury not to believe that "within seven days after this man was released from custody, he was back selling narcotics."

■ In arguing a motion for acquittal, defense trial counsel referred to a conflict in the testimony. "The Court: That is a matter for the jury to decide on any conflicts." Counsel: "What I am saying is, it appears to me that an instruction on entrapment—." The judge ruled at once that there was "no evidence of entrapment."

We are urged now to reverse on the authority of Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127 (1963). The facts here are not remotely similar. Hodge and Garrett walked up to Berry and asked if he had narcotics for sale. He did. He was in business. He had at least 21 capsules in his possession, concealed in a gum package wrapper. He made two sales directly to the two purchasers in the presence of each other.

> "The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. Such conduct, of course, is far different from the permissible stratagems involved in the detection and prevention of crime. Thus before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by Government agents which may well have induced the accused to commit the crime charged."[4] (Emphasis in original.)

2. But officer Garrett had sworn affirmatively to the purchase of six capsules of heroin from Berry.

3. Cf. McIntosh v. United States, 114 U.S. App.D.C. 1, 309 F.2d 222 (1962).

4. Lopez v. United States, 373 U.S. 427, 434–435, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). In Hansford v. United States, we stated the principle thus: "A person is not entrapped when an officer merely presents him with the opportunity to

The trial judge ruled correctly. It is difficult to conjure up more complete evidence of two open and direct sales than we have here. Berry clearly was not entrapped into carrying a supply of heroin concealed in a chewing gum package, from which he dispensed 15 capsules for $22.50 and six capsules for $9, in "ready compliance" [5] with what looked to him like a good opportunity to do some of the very business he was equipped and so ready to transact.

We find no error.

Affirmed.

WRIGHT, Circuit Judge (concurring in part and dissenting in part).

This case presents the question of entrapment by federal officers, a problem which has troubled the conscience of the court on other occasions. Mr. Justice Roberts, concurring in Sorrells v. United States, 287 U.S. 435, 459, 53 S.Ct. 210, 219, 77 L.Ed. 413 (1932), stated the principle as follows:

"The applicable principle is that courts must be closed to the trial of a crime instigated by the government's own agents. No other issue, no comparison of equities as between the guilty official and the guilty defendant, has any place in the enforcement of this overruling principle of public policy."

At page 457 in the same opinion, 53 S.Ct. at page 218, Mr. Justice Roberts expanded on this principle:

" * * * The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law. The violation

of the principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention. * * "

Similarly, Mr. Justice Frankfurter has expressed concern over the Government's creation of crime:

" * * * Furthermore, a test that looks to the character and predisposition of the defendant rather than the conduct of the police loses sight of the underlying reason for the defense of entrapment. No matter what the defendant's past record and present inclinations to criminality, or the depths to which he has sunk in the estimation of society, certain police conduct to ensnare him into further crime is not to be tolerated by an advanced society. * * * " Sherman v. United States, 356 U.S. 369, 382–383, 78 S.Ct. 819, 826, 2 L.Ed.2d 848 (1958).

Irrespective of these and other expressed misgivings as to the Government's participation in crime, it is still the law that presenting a predisposed suspect, who is ready, willing and able to commit crime, the opportunity to do so is not entrapment. See Hansford v. United States, 112 U.S.App.D.C. 359, 362, 303 F.2d 219, 222 (1962), and cases there cited. The issue presented by this appeal, however, is not entrapment as a matter of law, but entrapment as an issue for the jury. Did the prosecution prove to the jury's satisfaction beyond a reasonable doubt that the defendant was ready, willing, and able to sell the drugs and that the Government merely presented him the opportunity to violate the law? The defendant requested an instruction on entrapment to assist the jury in deciding this issue and it was refused, the trial court ruling, "There is no evidence of entrapment in this case.

commit an offense in order to detect criminality rather than to instigate it." 112 U.S.App.D.C. 359, at 362, 303 F.2d 219, at 222 (1962).

5. Fletcher v. United States, 111 U.S.App. D.C. 192, 194, 295 F.2d 179, 181 (1961), cert. denied, 368 U.S. 993, 82 S.Ct. 613, 7 L.Ed.2d 530 (1962).

No evidence at all to warrant a charge on entrapment."

In so ruling, the trial court was obviously in error.[1] The Government's evidence shows that the purchases from the defendant were made by a Government agent, using a drug addict as an intermediary, and by the intermediary himself, both purchases being made with Government money. The evidence further shows that the agent and the informant sought out the defendant and asked for the drugs, the drug addict informant assuring the defendant that the Government agent "was O.K." Incidentally, the Government's evidence also shows that the informant was paid by the Government for his work and that a possession of narcotics charge previously filed against him was dismissed.

Under these circumstances, it can hardly be said there was no "showing of the kind of conduct by Government agents which may well have induced the accused to commit the crime charged." Lopez v. United States, 373 U.S. 427, 434–435, 83 S.Ct. 1381, 1385–1386, 10 L.Ed.2d 462 (1963). Without doubt, by offering to buy, the Government induced the defendant to sell. "As pointed out by Mr. Justice Frankfurter in his Sherman concurrence, the *particular* sale to an officer or police agent is *always* one induced by the purchaser." [2] The question, to be answered by the jury, then is: would he have sold to anyone he considered safe? [3] Thus a jury issue on entrapment was raised and a charge on entrapment should have been given as to the sale counts in the indictment. Johnson v. United States, supra, Note 3.[4]

1. The possession counts and the sale counts must be distinguished. As to possession, it is of course true that there can be no entrapment if an accused had the narcotics in his actual custody at the very moment he was first approached by Government agents. If he should leave them after that first approach, however, to go and fetch the narcotics, then the issue of entrapment would be raised as to possession also.

2. Trent v. United States, 109 U.S.App. D.C. 152, 154, n. 2, 284 F.2d 286, 288, n. 2 (1960). To the same effect, see Hansford v. United States, supra, 112 U.S.App. D.C. at 364, 303 F.2d at 224.

3. In United States v. Sherman, 2 Cir., 200 F.2d 880, 882–883 (1952), Judge Learned Hand also stated the rule in two parts:
   "Therefore in such cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it. * * *"
   See also United States v. Masciale, 2 Cir., 236 F.2d 601 (1956), affirmed, 356 U.S. 386, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958). The Hand doctrine has been adopted in this Circuit. Hansford v. United States, supra, 112 U.S.App.D.C. at 364, 303 F.2d at 224; Johnson v. United States, 115 U.S.App.D.C. 63, 317 F. 2d 127, 129 (1963).

4. In Johnson, supra, Note 3, Judge Fahy wrote:
   "* * * Here the evidence does not show, as sometimes is the case, that personal importuning or coercive tactics were used by the officer to persuade appellant. We do have, however, the furnishing by the officer of Government money, itself a persuasive factor, to an intermediary acting for the officer in carrying out the tansaction, with a 'reward' to the accused of a part of its fruit. This is enough to raise a factual issue of official inducement for the jury to decide one way or the other. * * *" 115 U.S.App.D.C. at 64, 317 F.2d at 128.