**UNITED STATES of America,
Appellee,**

v.

**Dillard MORRISON, Defendant-Appellant.**

**No. 488, Docket 29465.**

United States Court of Appeals
Second Circuit.

Argued May 18, 1965.

Decided July 26, 1965.

Certiorari Denied Nov. 8, 1965.

See 86 S.Ct. 242.

———◆———

Robert L. Latchford, Asst. U. S. Atty.
(Robert M. Morgenthau, U. S. Atty.,
David M. Dorsen, Asst. U. S. Atty.), for
appellee.

Raymond A. Brown, Jersey City, N. J.,
for defendant-appellant.

Before WATERMAN, MARSHALL
and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge.

After a three-day trial in the United
States District Court for the Southern
District of New York, before Judge Tyler
and a jury, defendant was convicted on
two counts of selling or giving away nar-
cotics without obtaining a written order

on an official form, 26 U.S.C. § 4705(a). We affirm the conviction.

Defendant claims that the trial judge erred in his charge to the jury on the issue of entrapment, first, by failing to instruct that unconscionable government conduct in promoting the acts for which defendant was prosecuted would nullify his guilt, and second, by failing to delimit the probative significance of defendant's prior criminal record. Because these claims were not raised at the trial, we shall notice them only if they demonstrate "[p]lain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b).

First. Assuming that the government had initiated or set in motion the acts for which defendant is being prosecuted, the crucial issued posed by the defense of entrapment traditionally has been: "[W]as the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence." United States v. Sherman, 200 F.2d 880, 882 (2 Cir. 1952). However, a recent reassessment of the entrapment defense has led two Courts of Appeals to inquire, alternatively, whether, in exposing the defendant's criminality, the government agents have acted in an offensive manner or lived up to reasonably decent civilized standards for the proper use of government power. Whiting v. United States, 321 F.2d 72, 76–77 (1 Cir.), cert. denied, 375 U.S. 884, 84 S.Ct. 158, 11 L.Ed.2d 114 (1963); Accardi v. United States, 257 F.2d 168, 172–173 (5 Cir.), cert. denied, 358 U.S. 883, 79 S.Ct. 124, 3 L.Ed.2d 112 (1958).

This elaboration of the defense of entrapment is mainly derived from a viewpoint thus far adopted by only a minority of the Supreme Court. See Sorrells v. United States, 287 U.S. 435, 453–459, 53 S.Ct. 210, 77 L.Ed. 413 (1932) (separate opinion of Roberts, Brandeis, and Stone, JJ.); Sherman v. United States, 356 U.S. 369, 378–385, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (concurring opinion of Frankfurter, Douglas, Harlan, and Brennan, JJ.). However, the current majority has expressly declined to disavow permanently this viewpoint which focuses on the conduct of the government. As the Supreme Court has said:

"The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. Such conduct, of course, is far different from the permissible stratagems involved in the detection and prevention of crime. Thus before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged." Lopez v. United States, 373 U.S. 427, 434–435, 83 S.Ct. 1381, 1385–1386, 10 L.Ed.2d 462 (1963).

And see Sherman v. United States, supra 356 U.S. at 376–377, 78 S.Ct. 819. Moreover, the majority, too, has spoken of the entrapment defense in terms of "integrity of administration" and "objectionable police methods." Sorrells v. United States, supra 287 U.S. at 448–449, 53 S.Ct. 210; Sherman v. United States, supra 356 U.S. at 372, 78 S.Ct. 819.

■ Accordingly, in United States v. Pugliese (2 Cir. June 8, 1965), 346 F.2d 861, our court recently recognized that the alleged exertion of "undue pressure" or "improper pressure" by the government was a "principal point of dispute" and a "crucial issue" in the case. We take this opportunity to restate what was implicit in our former decision: assuming that the government has initiated or set in motion the acts of the defendant, the entrapment defense probes not only the predisposition of the defendant to commit the crime with which he is charged, but, alternatively, the conduct of the government in promoting the commission of the crime. In the absence of briefing by the parties, we shall also assume, *solely for the purposes of this case,* that the issue of the government's conduct is to be determined by the jury, just as is the issue of the defendant's predis-

position; but see Whiting v. United States, supra 321 F.2d at 76 n. 8.

■ At the same time, we stated in United States v. Pugliese, supra at 861 of 346 F.2d, that when the trial judge instructs the jury that the defense of entrapment turns on a finding of "persuasion and representations" by the law enforcement officers, the jury is likely to understand him to mean the exertion of undue and improper pressure by the government. Here the trial judge went further; he spoke of defendant allegedly having been "unfairly induced or coerced by the conduct of the agents" and of the agents having "forced him or pushed him" to commit the crime. While this charge did not state with absolute clarity that government misconduct is an alternative basis of the entrapment defense, we hold it to have been sufficient in the absence of an objection at trial by defendant. See United States v. Kahaner, 317 F.2d 459, 477 (2 Cir.), cert. denied, 375 U.S. 835, 836, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963).

Second. After defendant himself had testified to his past criminal convictions for narcotics offenses and assault, the trial judge instructed the jury:

> "You are not only to assay the testimony as to what transpired on the given days in question, but also any information which shows the type of man that Mr. Morrison was, * * * what Morrison had done previously, what his record was; all of that might have a very crucial bearing in your deliberations on this claim of entrapment of the defendant."

The trial judge also suggested that defendant must have been an "innocent person" in order to be entitled to acquittal on the ground of entrapment.

Defendant acknowledges that his prior criminal record was relevant to the issue of whether he was predisposed to do the acts for which he was prosecuted. United States v. Sherman, supra 200 F. 2d at 882. He argues, however, citing Sherman v. United States, supra 356 U. S. at 375–376, 78 S.Ct. 819, that the trial

judge erred in failing to warn the jury to discount past criminal offenses remote in time or in kind. He also contends, citing Hansford v. United States, 112 U. S.App.D.C. 359, 303 F.2d 219, 221–222 (1962), that the jury might have understood the trial judge's allusion to the "innocent person" to mean that only those without prior criminal records are entitled to acquittal on the ground of entrapment.

■ Because defendants may be seriously prejudiced by the introduction, even though proper, of evidence bearing on their past criminal offenses, careful instructions are appropriate to limit the degree of the prejudice. The principal danger, however, is that the government will introduce the evidence and that the jury will take it as proof of guilt. See Sherman v. United States, supra 356 U.S. at 382, 78 S.Ct. 819 (concurring opinion); Hansford v. United States, supra 303 F. 2d at 225–226. Here, the evidence was introduced by defendant himself, and the trial judge expressly warned the jury, "Mr. Morrison is not on trial for any other charges than the ones I have been discussing, and thus it is not relevant to the charges of the criminal conduct as such that any previous record be considered."

■ As for possible prejudice with regard to the defense of entrapment, we agree that more precise instructions might have been appropriate and that the allusion to the "innocent person" might better have been avoided. Defendant cannot demand a jury charge perfect in every significant detail, however, unless he is prepared to assist the trial judge in formulating one. In the absence of an objection at trial by defendant, we cannot say that in this case the instructions, taken as a whole, were so likely to mislead the jury on the entrapment defense as to constitute blatant error requiring reversal. Compare United States v. Pugliese, supra at 861 of 346 F.2d.

■■ Defendant also claims that the evidence established entrapment as a

matter of law, and therefore the trial judge should have directed his acquittal. We need not decide whether defendant's testimony, if true, warranted a directed verdict in his favor. There was conflict in the proofs on this issue, and the jury was entitled to rely on the evidence favorable to the government. See Masciale v. United States, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958); United States v. Pugliese, supra at 861 of 346 F.2d. The jury could rationally conclude, on the basis of this evidence, that defendant was predisposed to sell or give away narcotics. See United States v. Pugliese, supra at 861 of 346 F.2d; United States v. Orza, 320 F.2d 574 (2 Cir.1963). Moreover, assuming as the defendant would have us that the issue of government misconduct was to be determined by the triers of fact, the jury also could reasonably decide that the bounds of fairness had not been exceeded in this case.

Affirmed.