**UNITED STATES of America,**
**Appellee,**

v.

**Walter RILEY, Defendant-Appellant.**

**No. 412, Docket 29383.**

United States Court of Appeals
Second Circuit.

Argued May 26, 1966.

Decided July 12, 1966.

Hays, Circuit Judge, dissented.

Milton R. Gleit, New York City (Anthony F. Marra, New York City), for appellant.

Stephen F. Williams, New York City (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, John S. Allee, Asst. U. S. Atty., of counsel), for appellee.

Before FRIENDLY, HAYS and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

In this typical narcotics prosecution under 21 U.S.C. §§ 173 and 174, in which the defendant Riley received a mandatory ten year sentence as a second offender, the sole issue on appeal is the judge's refusal to allow the defense to argue entrapment and to submit the issue to the jury.

The Government's evidence was given primarily by an undercover agent of the Federal Bureau of Narcotics, whose account was supported by another agent surveilling from afar. The former testified that, on April 27, 1964, an unnamed informant took him to Riley's apartment and introduced him as "Hank," a friend from Washington, D. C., who wanted to buy narcotics; that Riley led him off to another room and negotiated the transaction for three "bundles," each containing twenty-five "bags," for $225; that Riley then left the apartment, telling the agent and the informant to wait for him; and that Riley later returned, took the agent aside in the bedroom, and handed him the three bundles. Before the agent left, Riley asked about his future requirements and arranged to have a half ounce ready the following week.

On the afternoon of May 6 the agent and the informant drove to Riley's apartment and Riley negotiated the sale of a half ounce of heroin at $300. After furnishing Riley with transportation, the agent awaited him at a bar; Riley made the delivery and arranged a sale for the next week.

Not disputing the transactions, Riley gave a wholly different version of their provenance. He was an addict for nearly twenty years with a record of two previous convictions for possession of narcotics but not for their sale. The informant, known to Riley as "Charles," was a friend with whom he had often "taken off" and "gotten high." They had shared supplies when either was in need; only a few days earlier Charles had come to his house to use his needle. Hank, introduced as a friend of Charles from Brooklyn, said he and his wife were "sick," i. e., in need of a dose of narcotics, and sought Riley's help in getting some. When Riley protested that he was not a seller of narcotics, Hank inquired whether he didn't know where to get them; Riley responded that he would go out on the street and see what he could do. Hank's request for twenty-five bags, in contrast to his own daily purchases of only four or five, indicated to him that Hank was not only a user but also a seller; indeed Hank said he sold in Brooklyn and lacked a connection. Riley accommodated Hank "on the strength of Charles, because he is a friend of mine"; his sole reward for procuring the three bundles was a gift of five bags by Hank. The May 6 transaction, in no way prearranged, was "the same thing"; Hank "told me he didn't have just enough money to cop with and he said he would give me some narcotics if I would go and get him some."

Judge Palmieri, relying on remarks by this Court in United States v. Place, 263 F.2d 627, 629–630 (2 Cir.), cert. denied, 360 U.S. 920, 79 S.Ct. 1439, 3 L.Ed.2d

1535 (1959), in which he had also presided, declined, at the Government's instance, either to allow defense counsel to argue entrapment to the jury or to instruct it on that score. Although the judge's attitude was understandable in light of the *Place* opinion, we hold it was error to rule out the defense of entrapment.

The Supreme Court has long been divided as to who should decide that issue, the majority holding for the jury and a strong minority for the judge. Sorrells v. United States, 287 U.S. 435, 452, 457, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Sherman v. United States, 356 U.S. 369, 376–378, 385, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Masciale v. United States, 356 U.S. 386, 388, 389, 78 S.Ct. 827, 2 L.Ed.2d 859 (1958).[1] The view of the *Sorrells* majority followed logically from its concept that a case of entrapment was implicitly excepted from the statutory definition of the crime; the minority's view flowed with equal logic from its concept that the defense was for the protection of the court's "own functions and the preservation of the purity of its own temple." 287 U.S. at 457, 53 S.Ct. at 218 (separate opinion of Mr. Justice Roberts). See also Casey v. United States, 276 U.S. 413, 421, 423–425, 48 S.Ct. 373, 72 L.Ed. 632 (1928) (dissenting opinion of Mr. Justice Brandeis). Cf. Paulsen and Kadish, Criminal Law and Its Processes 903 (1962). So long as *Sorrells* stands, our problem is not whether entrapment should ever be submitted to the jury but when the evidence calls for doing so.

On the first appeal in United States v. Sherman, 200 F.2d 880, 882–883 (2 Cir. 1952), Judge L. Hand analyzed the defense of entrapment as presenting two issues: "(1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any

---

1. The same division of opinion exists among the commentators. Contrast, e. g., Note, Entrapment, 73 Harv.L.Rev. 1333, 1343–44 (1960), with ALI, Model Penal Code § 2.13(2) (Proposed Official Draft 1962) and commentary in Tent. Draft No. 9 at 20–21 (1959).

propitious opportunity to commit the offence." He continued that "On the first question the accused has the burden; on the second the prosecution has it." Since, as we have lately had occasion to explain, the first element goes simply to the Government's initiation of the crime and not to the degree of pressure exerted, United States v. Pugliese, 346 F.2d 861, 863 (2 Cir. 1965); United States v. Jones, 360 F.2d 92, 96 (2 Cir. 1966),[2] it can be argued with some force that submission to the jury is demanded whenever there is evidence that would warrant a finding of such initiation—an element supplied here, as in most trials for narcotics peddling, by the Government itself; the prosecution would then have the burden of proving propensity beyond a reasonable doubt to a jury which is always free to disbelieve its witnesses. A recent decision indicates the First Circuit has arrived at this result. Sagansky v. United States, 358 F.2d 195, 202–203 (1966).

■■ As nearly as we can make out from an argument much obscured by the common misconception of what constitutes "inducement," the Government would say that even when inducement has been established by its own evidence, the issue of entrapment need not be put to the jury if the evidence on propensity so preponderates in its favor that the jury could not reasonably find for the defendant. We find it impossible to square such a view either with the rationale of *Sorrells* or with the historic function of the jury in criminal trials. Cases like this frequently present an issue of credibility as between the agent

and the defendant, compare United States v. Jones, supra; resolution of such an issue is peculiarly within the jury's province. If it credits the defendant's story in whole or in part, the ensuing question of whether the Government has gone so far in causing the criminal conduct as to take the case outside the definition of the crime and to render punishment an act of injustice, is also highly suitable for determination by a jury, representing "the voice of the country." 2 Pollock & Maitland, History of English Law 623–26 (1898). Review of our previous decisions does not convince us that we are committed to any such rule as that for which the Government contends. The single authority cited by the Government from this circuit, United States v. White, 223 F.2d 674, 676, cert. denied, 350 U.S. 888, 76 S.Ct. 143, 100 L.Ed. 782 (1955), laid down no general principle as to when a court could refuse to send an entrapment defense to the jury; we held only that the judge was warranted in ruling out the issue where the defendant's confession of numerous sales of narcotics, uncontroverted by any testimony on his part or otherwise, established his propensity to commit the crime. Although what was said in United States v. Place, 263 F.2d 627 (2 Cir.), cert. denied, 360 U.S. 920, 79 S.Ct. 1439 (1959), may not square with the position now taken by the First Circuit, it does not support what the Government urges in this case; the opinion stressed that "unlike the defendant in the *Masciale* case, the defendants here did not take the stand and infuse a color of plausibility into the defense of entrap-

2. Judge Hand defined the limited character of the concept of inducement when he said on the first *Sherman* appeal, 200 F.2d at 883:
   "So far as concerns the defence—i. e., the inducement—it was complete without 'trickery' or 'fraud'; it includes soliciting, proposing, initiating, broaching or suggesting the commission of the offence charged. If the prosecution sees fit to set the accused in motion, it is called upon to make good its excuse."
   The Supreme Court's discussion on the second appeal, Sherman v. United States,

356 U.S. 369, 373, 78 S.Ct. 819 (1958), quoted by our dissenting brother, did not criticize this in any way; rather it was devoted to showing that entrapment had been established "as a matter of law," 356 U.S. at 370, 78 S.Ct. 819, i. e., that the government had not borne its burden of establishing propensity and freedom from pressure. The point in Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963), was that the defendant had initiated the improper offers to the revenue agent, so that there was thus no inducement in any sense.

ment which made it a question for the jury," and there was "a wealth of uncontradicted evidence that both defendants were thoroughly predisposed to violate the narcotics laws, were currently and continuously dealing in narcotics, and that Place, indeed, had supplied narcotics to Manning before the latter had volunteered to serve as an informer." 263 F.2d at 629.

Recognizing the abstract logic of the First Circuit's position, we do not deem it wise or necessary to go quite so far. A sensible middle of the road solution, consistent with our own decisions and with most elsewhere, would be that, even when inducement has been shown, submission to the jury is not required if uncontradicted proof has established that the accused was "ready and willing without persuasion" and to have been "awaiting any propitious opportunity to commit the offense." In such cases there is no real issue for the jury even though in strict theory it might create one by speculating that the agents had found the defendant less willing than they said. On the other hand, the production of any evidence negating propensity, whether in cross-examination or otherwise, requires submission to the jury, however unreasonable the judge would consider a verdict in favor of the defendant to be. Such a rule reconciles many of the cases affirming convictions on the ground that submission was not required even though the evidence showed Government initiation of the crime, e.g., United States v. White, supra; Rodriguez v. United States, 227 F.2d 912 (5 Cir. 1955); Hester v. United States, 303 F.2d 47 (10 Cir.), cert. denied, 371 U.S. 847, 83 S.Ct. 80, 9 L.Ed.2d 82 (1962); Berry v. United States, 116 U.S.App.D.C. 375, 324 F.2d 407 (1963), cert. denied, 376 U.S. 959, 84 S.Ct. 972, 11 L.Ed.2d 977 (1964),[3] with others condemning a failure to put the issue to the jury although the evidence on propensity strongly favored the prosecution. See, e.g., Wall v. United States, 65 F.2d 993 (5 Cir. 1933); Ryles v. United States, 172 F.2d 72, 74 (10 Cir. 1948), rev'd on suggestion of the Solicitor General, 336 U.S. 949, 69 S.Ct. 882, 93 L.Ed. 1104 (1949), see 183 F.2d 944 (10 Cir.), cert. denied, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 637 (1950); United States v. Sawyer, 210 F.2d 169 (3 Cir. 1954); Crisp v. United States, 262 F.2d 68 (4 Cir. 1958); Johnson v. United States, 115 U.S.App.D.C. 63, 317 F.2d 127 (1963).

■ Application of this rule requires reversal. Riley's testimony sufficed to raise the issue whether he was "ready and willing without persuasion," to engage in the illegal conduct. According to his story the informant used to effect the agent's introduction was not merely a friend but a partner in many opiate sessions; the agent solicited the narcotics from Riley, an addict himself, on a claim that he and his wife were sick and in desperate need of drugs; Riley was not a seller and did not act as one here, receiving no fee for his services apart from a small portion of the narcotics for his own habit; and even the rather large quantities admittedly sold—the most damaging undisputed fact against him—were explained by his assumption that the agent Hank was a seller as well as a user. Although the judge could well have thought that Riley's testimony was much too pat and that the Government had far the better of the argument, decision as to entrapment was for the jury.[4]

Reversed for a new trial.

HAYS, Circuit Judge (dissenting):

I would affirm.

---

3. The opinion in United States v. Lile, 290 F.2d 225 (6 Cir. 1961), indicates the court did not consider there was any evidence negating propensity; in any event the decision is based on what we have held to be too narrow a concept of inducement.

4. We are thus not required to consider whether reversal would also be required on the basis of United States v. Morrison, 348 F.2d 1003, 1004–1005 (2 Cir. 1965).

I accept, as do my brethren, Judge Learned Hand's analysis of the defense of entrapment:

"Therefore in such cases two questions of fact arise: (1) did the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it." United States v. Sherman, 200 F.2d 880, 882–883 (2d Cir. 1952).

I differ with the majority over what constitutes inducement. The majority believes that the accused satisfies his burden on the issue of inducement by showing a mere offer by a government agent to purchase narcotics. I find no justification for this position.

Under the authorities much more serious police misconduct must be shown. See, e.g., Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381 (1963); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819 (1958); Masciale v. United States, 356 U.S. 386, 78 S.Ct. 827, (1958); Berry v. United States, 116 U.S.App.D.C. 375, 324 F.2d 407, 409 (1963), cert. denied, 376 U.S. 959, 84 S.Ct. 972 (1964); Hester v. United States, 303 F.2d 47 (10th Cir.), cert. denied, 371 U.S. 847, 83 S.Ct. 80 (1962); United States v. Lile, 290 F.2d 225 (6th Cir. 1961); United States v. White, 223 F.2d 674, 676 (2d Cir.), cert. denied, 350 U.S. 888, 76 S.Ct. 143 (1955); Note, Entrapment: An Analysis of Disagreement, 1965 B.U.L.Rev. 542, 553 n. 70 (1965); Note, Entrapment, 73 Harv. L.Rev. 1333, 1336 (1960).

In Sherman v. United States, 356 U.S. 369, 373, 78 S.Ct. 819, 821 (1958), the Court held that it was "patently clear that petitioner was induced" by the unsavory conduct of the police informer because:

"The informer himself testified that, believing petitioner to be undergoing a cure for narcotics addiction, he nonetheless sought to persuade petitioner to obtain for him a source of narcotics. In Kalchinian's own words we are told of the *accidental, yet recurring, meetings, the ensuing conversations concerning mutual experiences* in regard to narcotics addiction, *and then of Kalchinian's resort to sympathy. One request was not enough, for Kalchinian tells us that additional ones were necessary to overcome, first, petitioner's refusal, then his evasiveness, and then his hesitancy in order to achieve capitulation.* Kalchinian not only procured a source of narcotics but apparently also induced petitioner to return to the habit." (Emphasis added.)

In Lopez v. United States, supra, 373 U.S. at 434–35, 83 S.Ct. at 1385, the Court said:

"The conduct with which the defense of entrapment is concerned is the *manufacturing* of crime by law enforcement officials and their agents. Such conduct, of course, is far different from the permissible stratagems involved in the detection and prevention of crime. Thus before the issue of entrapment can fairly be said to have been presented in a criminal prosecution there must have been *at least some showing of the kind of conduct by government agents which may well have induced the accused to commit the crime charged.*" (Emphasis added.)

All of the cases cited by the majority as "condemning a failure to put the issue [i.e., entrapment] to the jury" are readily distinguishable from the case at bar since they involve allegations of serious police misconduct.

The principal justification for the defense of entrapment is that it deters wrongful police conduct. Entrapment cases often arise in situations (e.g., illegal sales of narcotics, liquor or firearms) in which no unwilling victim is involved, and in which it would be virtually impossible to detect or prove the commission of a crime without an offer to purchase. As the Commentary to the

Model Penal Code, § 2.10 at 16 (Tentative Draft No. 9, 1959) notes:

"The principal difficulty in defining the police conduct which gives rise to the defense has lain in the fact that some tactics employing misrepresentation and persuasion are necessary to successful police work and ought not to be forbidden. In many cases the need for techniques of this sort clearly overbalances the risk of inducing offending by the innocent. * * * Misrepresentation by a police officer or agent concerning the identity of the purchaser of illegal narcotics is a practical necessity. * * * Therefore, the law must attempt to distinguish between those deceits and persuasions which are permissible and those which are not."

See Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 212 (1932) ("Artifice and stratagem may be employed to catch those engaged in criminal enterprises").

In view of the authorities, I cannot understand why my brothers have shifted the burden against the government and hold that appellant's "production of any evidence negating propensity, whether in cross-examination or otherwise, requires submission to the jury, however unreasonable the judge would consider a verdict in favor of the defendant to be."

In contrast with the police conduct in all of the cases cited by the majority, appellant has not sustained his burden of showing inducement. All that we have here is a mere offer to purchase narcotics and swift acceptance.

It is true that appellant quoted Agent Paschal as saying that he and his wife were "sick" (i. e., suffering the effects of withdrawal), but this is irrelevant since appellant also testified that the large quantity of narcotics purchased and Paschal's statements led him to believe "that he [Paschal] was a seller."

Moreover, appellant testified as to the second transaction that Paschal "asked me could I get him more stuff," and "I told him I don't know, I'd have to get out and see." There was no mention of sickness.

This case is indistinguishable from United States v. Lile, 290 F.2d 226 (6th Cir. 1961), where the district judge properly refused to charge on entrapment. See United States v. Place, 263 F.2d 627, 629, (2d Cir.), cert. denied, 360 U.S. 920, 79 S.Ct. 1439 (1959).