**UNITED STATES of America,**
**Appellee,**

**v.**

**Herbert GREENBERG, Appellant.**

**No. 627, Docket 35591.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 9, 1971.

Decided June 16, 1971.

---

John R. Wing, Jack Kaplan, Asst. U. S. Attys., Whitney North Seymour, Jr., U. S. Atty., for appellee.

Kalman V. Gallop, New York City, for appellant.

Before FRIENDLY, Chief Judge, WATERMAN, Circuit Judge, and McLEAN, District Judge.*

WATERMAN, Circuit Judge:

In a three-count indictment Herbert Greenberg, an agent of the Internal Revenue Service, was charged with having violated three different statutes. In the first count he was charged with bribery (18 U.S.C. § 201(b)); in the second with giving $200 otherwise than as provided by law to a public official for and because of official acts to be performed by the official (18 U.S.C. § 201(f)); and in the third with having failed to report a violation of the revenue laws (26 U.S.C. § 7214(a) (8)). He was tried to a jury and did not take the stand in his own defense. The third count was dismissed by the trial judge at the close of the government case. The remaining two counts were submitted to the jury which acquitted on the first count and returned a guilty verdict on the second. Appellant was sentenced to a six month term of imprisonment and fined $5000; he is presently free on bail. He appeals his conviction on Count Two and the only issues he presents upon his appeal relate to whether the trial judge acted properly in declining to submit for jury determination the question of whether appellant's criminal act was caused by a government entrapment.

This case arises out of the undercover investigation by the Inspection Service branch of the Internal Revenue Service into alleged corrupt practices by Internal Revenue Agents engaged in field audit work in the Jamaica, New York area.

In furtherance of this investigation Harold Wenig of the Inspection Service assumed the role of a corrupt and dishonest agent who was willing to sell to other Internal Revenue Agents information contained in the Inspection Service files. He met Jack Brover on March 23, 1967 to discuss the sale of information regarding a special audit of a case in which Brover had accepted a substantial bribe. During the course of the meeting Wenig asked Brover if he knew Greenberg and, when Brover answered affirmatively, Wenig indicated that Greenberg's activities were also being investigated. Brover subsequently contacted Greenberg, informed him of the investigation, and commented on Wenig's willingness to sell information. Greenberg agreed to meet Wenig and arrangements for the meeting were then made by Brover during a telephone conversation with Wenig, in the course of which Brover assured Wenig that Greenberg understood the financial arrangements that Greenberg would be expected to comply with.

On April 7, 1967 Wenig met with Brover and Greenberg in Wenig's automobile. Wenig drove them around lower Manhattan while Greenberg, seeking to insure Wenig's trustworthiness, sought to identify acquaintances and associates that he and Wenig might know in common. After a short time Wenig stopped the car, parked it conveniently near four surveilling Inspection Service agents, and asked Greenberg to leave momentarily. Wenig then spoke privately with Brover, and when Greenberg reentered the car Brover left. Then, following some preliminary sparring, Wenig told Greenberg that the Inspection Service was interested in checking up on the field audit of Arthur and Lucille DeBevoise and of various corporations owned by them because the audit seemed incomplete and because bribes might have been accepted. Greenberg recalled the audit. He denied accepting a bribe, but admitted overlooking certain ques-

---

* Of the Southern District of New York, sitting by designation.

tionable claims. He expressed apprehension to Wenig, especially because he said he feared that the taxpayers' accountant had probably received funds from the taxpayers with which to make a bribe but had kept the money for himself and Greenberg thought that the accountant, if arrested, would claim that he had passed on the money. Greenberg admitted that he suspected other agents working on the case had "done something" and, as a result, he concluded he should go along rather than rock the boat.

Greenberg asked Wenig to continue to provide information and he asked for Wenig's private telephone number. Greenberg wondered whether Wenig could reach the investigating agent, but Wenig argued that this would be too risky. At this point Greenberg noted that perhaps the Mafia could reach him even if Wenig could not. Wenig thought aloud that the better course would be to await further developments, and Greenberg agreed.

Greenberg gave Wenig two $100 bills.

Four other I.R.S. inspectors observed this meeting and the conversation was recorded through devices secreted upon Wenig's person and hidden in his car.

On April 17, 1967 Wenig told Greenberg over the telephone that the De-Bevoise corporations were being investigated for criminal tax fraud and that bringing in the Mafia to reach the investigating agent would not be wise. This was the only other time Wenig and Greenberg conversed. At trial the tape recording of the April 7 talks was admitted into evidence and was heard by the jury. Greenberg did not take the stand and sought to establish the defense that the Government had entrapped him into giving the money to Wenig. The trial judge ruled that, as a matter of law, there was insufficient proof of this to warrant the submission of that issue to the jury.

Greenberg contends that this ruling was prejudicially erroneous, that the issues relevant to his entrapment defense should have been submitted to the jury and that the failure to do so requires a new trial. We do not agree and affirm the conviction.

This circuit adheres to the bifurcated analysis of entrapment defined in United States v. Sherman, 200 F.2d 880, 882–883 (2 Cir. 1952) (L. Hand).[1] In *Sherman* we sought to explain the early Supreme Court decision in Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and concluded that the defense of entrapment presents two separate factual issues for resolution:

(1) [D]id the agent induce the accused to commit the offence charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offence. On the first question the accused has the burden; on the second the prosecution has it.

We have heretofore ruled that inducement refers to the Government's initiation of the crime apart from the degree of pressure exerted upon the defendant to commit the crime; and that the defendant's burden is "relatively slight" to substantiate an inducement. United States v. Henry, 417 F.2d 267, 269 (2 Cir. 1969), cert. denied, 397 U.S. 953, 90 S.Ct. 980, 25 L.Ed.2d 136 (1970). Here it is conceded that sufficient evidence of inducement was supplied.

We now discuss the second, the predisposition, issue. In United States v. Riley, 363 F.2d 955, 959 (2 Cir. 1966), we considered the proof required of the Government to satisfy its burden on this issue so as to preclude submission of the entrapment defense to the jury, and we held that entrapment is not a jury question "if uncontradicted proof has established that the accused" had the requi-

---

1. This approach has been rejected by the First Circuit in Kadis v. United States, 373 F.2d 370 (1 Cir. 1967). We have not been asked to reconsider *Sherman* in the light of *Kadis*.

site propensity. Nevertheless, "the production of any evidence negating propensity, whether in cross-examination or otherwise, requires submission to the jury, however unreasonable the judge would consider a verdict in favor of the defendant to be." [2]

As required by *Riley*, here the district court found as the basis for not submitting the entrapment issue to the jury that "the government's evidence shows uncontradicted evidence of readiness and willingness."

 Greenberg argues that the requirement in *Riley* that the proof of propensity be uncontradicted means that that proof must be both "uncontradicted" and "beyond a reasonable doubt," that the Government failed to meet this standard, and that the Government's own evidence of government inducement was sufficient to require that the jury decide whether he was entrapped. We agree with appellant that the Government must introduce more than a "scintilla" of evidence on predisposition. But here the Government went far beyond this. Its evidence showed that Greenberg grasped at the opportunity, and this was not challenged either by contradiction or by impeachment of the Government witnesses. As recognized in *Riley* the defense of entrapment is primarily the implementation of a policy that crimes committed at the behest of government agents involve special considerations, but that the defense does not negative any of the essential elements of the crime. Thus, when the Government offers substantial evidence

of propensity and this is in no way challenged, there is no occasion to submit the issue of entrapment to the jury.[3]

 Appellant contends that, even though he did not contradict the Government's evidence, the prosecution's own case was internally inconsistent and so the Government itself failed to build a substantial enough case to withdraw entrapment issues from the jury. However, we are satisfied from a careful reading of the transcript that the Government clearly demonstrated Greenberg's predisposition, and, as Greenberg offered no contradictory evidence, we subscribe to the district court's conclusions,[4] and affirm his conviction.

Affirmed.

---

2. The court in *Riley* thought that its holding reconciled those cases which affirmed convictions "on the ground that submission was not required even though the evidence showed Government initiation" with other cases "condemning a failure to put the issue to the jury although the evidence on propensity strongly favored the prosecution." 363 F.2d at 959.

3. Of course it is to be noted that, if contradictory evidence is introduced, the question of predisposition becomes an

issue for the jury with the normal burden of proof beyond a reasonable doubt.

4. We are also asked to hold that the "permissible limits" of inducement were exceeded by the agent because "the fear of unwarranted investigation" by the government exerted an undue and improper pressure upon the defendant. Cf. United States v. Morrison, 348 F.2d 1003 (2 Cir.) cert. denied, 382 U.S. 905, 86 S.Ct. 242, 15 L.Ed.2d 158 (1965). The evidence, however, discloses that Greenberg was not an innocent citizen unjustly misled.